No. 24-40248

# In the United States Court of Appeals for the Fifth Circuit

———————————

M. D., by next friend SARAH R. STUKENBERG; D. I., by next friend NANCY G. POFAHL;
Z. H., by next friend CARLA B. MORRISON; S. A., by next friend JAVIER SOLIS; A. M., by
next friend JENNIFER TALLEY; J. S., by next friend ANNA J. RICKER; K. E., as next
friend JOHN W. CLIFF, JR.; M. R., as next friend BOBBIE M. YOUNG; J. R., as next
friend BOBBIE M. YOUNG; H. V., by next friend ANNA J. RICKER; P. O., as next friend
ANNA J. RICKER; L. H., as next friend ESTELA C. VASQUEZ; C. H.; S. R., as next friend
BOBBIE M. YOUNG; S. S., as next friend ESTELA C. VASQUEZ; A. R., as next friend TOM
MCKENZIE, individually and on behalf of all others similarly situated,

*Plaintiffs – Appellees*,

v.

GREG ABBOTT, in his official capacity as GOVERNOR OF THE STATE OF TEXAS; CECILE
ERWIN YOUNG, in her official capacity as EXECUTIVE COMMISSIONER OF THE HEALTH AND
HUMAN SERVICES COMMISSION OF THE STATE OF TEXAS; STEPHANIE MUTH, in her official
capacity as COMMISSIONER OF TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES,

*Defendants – Appellants*.

———————————

On Appeal from the U.S. District Court for the Southern District of Texas, Corpus
Christi Division, Case No. 2:11-cv-84

———————————

**DEFENDANTS' EMERGENCY MOTION FOR ADMINISTRATIVE STAY PENDING RESOLUTION
OF MOTION FOR STAY PENDING APPEAL AND MOTION FOR STAY PENDING APPEAL**

———————————

Ken Paxton
  *Attorney General of Texas*

Brent Webster
  *First Assistant Attorney General*

Aaron Nielson
Lanora Pettit
Kimberly Gdula
Karl E. Neudorfer
Clayton R. Watkins
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548, Capitol Station
Austin, Texas  78711
Telephone:  (512) 463-2120

Allyson N. Ho
  *Counsel of Record*
Bradley G. Hubbard
Stephen J. Hammer
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas  75201
Telephone:  (214) 698-3100
*aho@gibsondunn.com*

Prerak Shah
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, Texas  77002
Telephone:  (346) 718-6600

COUNSEL FOR DEFENDANTS-APPELLANTS

## CERTIFICATE OF INTERESTED PERSONS

No. 24-40248, *M. D., by next friend Sarah R. Stukenberg; D. I., by next friend Nancy G. Pofahl; Z. H., by next friend Carla B. Morrison; S. A., by next friend Javier Solis; A. M., by next friend Jennifer Talley; J. S., by next friend Anna J. Ricker; K. E., as next friend John W. Cliff, Jr.; M. R., as next friend Bobbie M. Young; J. R., as next friend Bobbie M. Young; H. V., by next friend Anna J. Ricker; P. O., as next friend Anna J. Ricker; L. H., as next friend Estela C. Vasquez; C. H.; S. R., as next friend Bobbie M. Young; S. S., as next friend Estela C. Vasquez; A. R., as next friend Tom McKenzie, individually and on behalf of all others similarly situated v. Greg Abbott, in his official capacity as Governor of the State of Texas; Cecile Erwin Young, in her official capacity as Executive Commissioner of the Health and Human Services Commission of the State of Texas; Stephanie Muth, in her official capacity as Commissioner of Texas Department of Family and Protective Services*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Defendants-Appellants | Counsel for Defendants-Appellants |
| --- | --- |
| **Greg Abbott**<br>*in his official capacity as* Governor of the State of Texas<br><br>**Stephanie Muth**<br>*in her official capacity as* Commissioner of the Department of Family and Protective Services of the State of Texas | Allyson N. Ho<br>Bradley G. Hubbard<br>John Stewart Adams<br>Stephen J. Hammer<br>Savannah Silver<br>Jason Muehlhoff<br>GIBSON, DUNN & CRUTCHER LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas 75201<br>Telephone: (214) 698-3100 |

CERTIFICATE OF INTERESTED PERSONS
(continued)

| Cecile Erwin Young *in her official capacity as* Executive Commissioner of the Health and Human Services Commission of the State of Texas | Prerak Shah<br>GIBSON, DUNN & CRUTCHER LLP<br>811 Main Street, Suite 3000<br>Houston, Texas 77002<br>Telephone:  (346) 718-6600<br><br>Ken Paxton<br> *Attorney General of Texas*<br><br>Brent Webster<br> *First Assistant Attorney General*<br><br>Aaron Nielson<br>James Lloyd<br>Lanora Pettit<br>Kimberly Gdula<br>Karl E. Neudorfer<br>Clayton R. Watkins<br>OFFICE OF THE ATTORNEY GENERAL<br>P.O. Box 12548, Capitol Station<br>Austin, Texas 7 8711<br>Telephone:  (512) 463-2120 |
| **Plaintiffs-Appellees** | **Counsel for Plaintiffs-Appellees** |
| **M.D.** *by next of friend* Sarah R. Stukenberg<br><br>**D.I.** *by next of friend* Nancy G. Pofahl<br><br>**Z.H.** *by next of friend* Carla B. Morrison<br><br>**S.A.** *by next of friend* Javier E. Solis | R. Paul Yetter<br>Christian J. Ward<br>Dori Goldman<br>Karla Maradiaga<br>YETTER COLEMAN LLP<br>811 Main Street, Suite 4100<br>Houston, Texas 77002<br>Telephone:  (713) 632-8000<br><br>Barry F. McNeil<br>HAYNES AND BOONE, LLP<br>2323 Victory Avenue, Suite 700 |

## CERTIFICATE OF INTERESTED PERSONS
### (continued)

| | |
|---|---|
| **A.M.** *by next of friend* Jennifer Talley | Dallas, Texas  75219 Telephone:  (214) 651-5000 |
| **J.S.** *by next of friend* Anna J. Ricker | Samantha Bartosz Stephen Dixon Joshua Rosenthal Elizabeth Pitman Ira Lustbader |
| **K.E.** *by next of friend* John W. Cliff, Jr. | CHILDREN'S RIGHTS 88 Pine Street New York, New York  10005 Telephone:  (212) 683-2210 |
| **M.R.** *by next friend,* Bobbie M. Young | Michael Kenneth Bartosz Rachel Brodin Nili CHILDREN'S RIGHTS |
| **J.R.** *by next friend* Bobbie M. Young | 330 Seventh Avenue, Floor 4 New York, New York  10001 Telephone:  (212) 683-2210 |
| **H.V.** *by next friend,* Anna J. Ricker | Marcia Robinson Lowry David Baloche |
| **P.O.** *by next friend,* Anna J. Ricker | Laura Welikson A BETTER CHILDHOOD, INC. 355 Lexington Avenue, Floor 16 New York, New York  10017 Telephone:  (646) 795-4456 |
| **L.H.** *by next friend,* Estela C. Vasquez | |
| **C.H.** *by next friend,* Estela C. Vasquez | Richard Behrens SHEARMAN & STERLING LLP 2601 Olive Street, Floor 17 Dallas, TX  75201 Telephone:  (214) 271-5812 |
| **S.R.** *by next friend,* Bobbie M. Young | |

# CERTIFICATE OF INTERESTED PERSONS
(continued)

| | |
|---|---|
| **S.S.** *by next friend,*<br>Estela C. Vasquez<br><br>**A.R.** *by next friend*<br>Tom McKenzie,<br>*individually and on behalf of*<br>*all others similarly situated* | |

Respectfully submitted,

*/s/ Allyson N. Ho*
Allyson N. Ho

*Counsel of Record*

# TABLE OF CONTENTS

Page

Certificate of Interested Persons ............................................................. i

Table of Authorities ................................................................................ vi

Introduction ............................................................................................. 1

Statement of Facts ................................................................................... 3

    I.    The district court enters a broad injunction over Texas's foster care system and this Court repeatedly narrows its scope. ............................................................................... 3

    II.   Defendants devote significant effort and resources to complying with the district court's remedial orders, yet plaintiffs seek contempt. ................................................... 5

    III.  The district court holds the executive commissioner in contempt. ..................................................................... 8

Legal Standard ...................................................................................... 10

Argument ............................................................................................... 11

    I.    Defendants are highly likely to succeed on appeal. ............ 12

        A.   Plaintiffs didn't make a *prima facie* showing of noncompliance and defendants have substantially complied regardless. ................................................... 12

        B.   The district court imposed criminal contempt without providing constitutionally required criminal process. .......................................................... 18

    II.   Absent a stay, the state defendants will be irreparably injured, and a stay is in the public interest. ......................... 22

Conclusion ............................................................................................. 25

Certificate of Service ............................................................................. 27

Certificate of Conference ...................................................................... 27

Certificate of Compliance ..................................................................... 28

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Alberti v. Klevenhagen,*
    46 F.3d 1347 (5th Cir. 1992)................................................................22

*In re Baum,*
    606 F.2d 592 (5th Cir. 1979)................................................................13

*In re Bradley,*
    588 F.3d 254 (5th Cir. 2009)................................................................21

*Hicks ex rel. Feiock v. Feiock,*
    485 U.S. 624 (1988)................................................................19, 22

*Fortin v. Comm'r of Mass. Dep't of Pub. Welfare,*
    692 F.2d 790 (1st Cir. 1982)................................................................22

*In re Gee,*
    941 F.3d 153 (5th Cir. 2019)................................................................23

*Hamer v. Brown,*
    831 F.2d 1398 (8th Cir. 1987)................................................................24

*Hornbeck Offshore Servs., LLC v. Salazar,*
    713 F.3d 787 (5th Cir. 2013)................................................................12, 14

*Horne v. Flores,*
    557 U.S. 433 (2009)................................................................8

*Int'l Union, United Mine Workers of Am. v. Bagwell,*
    512 U.S. 821 (1994)................................................................19, 20, 21, 22

*In re Landry,*
    83 F.4th 300 (5th Cir. 2023)................................................................25

*Rizzo v. Goode,*
    423 U.S. 362 (1976)................................................................13

*Rufo v. Inmates of Suffolk Cnty. Jail,*
    502 U.S. 367 (1992)................................................................24

*M.D. ex rel. Stukenberg v. Abbott,*
    907 F.3d 237 (5th Cir. 2018)................................................................*passim*

*M.D. ex rel. Stukenberg v. Abbott,*
    929 F.3d 272 (5th Cir. 2019)................................................................4

TABLE OF AUTHORITIES
(continued)

Page(s)

*M.D. ex rel. Stukenberg v. Abbott*,
977 F.3d 479 (5th Cir. 2020)..................................................................5

*Taggart v. Lorenzen*,
139 S. Ct. 1795 (2019)...............................................................12, 13

*Tex. Democratic Party v. Abbott*,
961 F.3d 389 (5th Cir. 2020).............................................................10

*Texas v. Dep't of Labor*,
929 F.3d 205 (5th Cir. 2019).............................................................13

*Texas v. EPA*,
829 F.3d 405 (5th Cir. 2016).............................................................23

*Travelhost, Inc. v. Blandford*,
68 F.3d 958 (5th Cir. 1995)...............................................................14

*In re U.S. Bureau of Prisons*,
918 F.3d 431 (5th Cir. 2019).............................................................25

*United States v. Barnett*,
346 F.2d 99 (5th Cir. 1965)...............................................................13

*United States v. Wilson*,
421 U.S. 309 (1975)...........................................................................20

*Valentine v. Collier*,
956 F.3d 797 (5th Cir. 2020).............................................................11

*Veasey v. Abbott*,
870 F.3d 387 (5th Cir. 2017).......................................................11, 24

*Waste Mgmt. of Wash., Inc. v. Kattler*,
776 F.3d 336 (5th Cir. 2015).............................................................14

*Whitfield v. Pennington*,
832 F.2d 909 (5th Cir. 1987).............................................................14

**Constitutional Provisions**

Tex. Const. art. VIII, § 6.......................................................................24

TABLE OF AUTHORITIES
(continued)

Page(s)

**Statutes**

28 U.S.C. § 1291...........................................................25
General Appropriations Act § 16.04(b)(3) (May 20, 2023).....................24

## INTRODUCTION

Over five years ago, in one of several prior appeals in this case, this Court warned of the serious "federalism concerns" raised by "near-perpetual" federal court "oversight of an already-complex child-welfare regime." *M.D. ex rel. Stukenberg v. Abbott*, 907 F.3d 237, 246, 250 (5th Cir. 2018).  Yesterday, that warning proved prescient.

The district court issued a 427-page order holding in criminal contempt the governor-appointed, senate-confirmed executive commissioner of one of the largest state agencies in the country—and imposed $100,000 in daily sanctions, which began accruing immediately. Dkt. 1560 at 422–24.  An immediate stay is warranted because the state defendants are highly likely to succeed in their appeal of that order, and the equities strongly favor a stay.

Since the district court entered an injunction and more than 60 remedial orders over five years ago, the state defendants—the Texas Governor, the Executive Commissioner of Texas's Health and Human Services Commission, and the Commissioner of Texas's Department of Family and Protective Services—have worked tirelessly to safeguard the welfare of the children in their care and comply fully with the district

court's orders.  They've spent over $100 million in doing so, and instituted countless structural and policy reforms.  Nevertheless, the district court has now imposed criminal contempt fines of $100,000 a day.  That's saying nothing of the grave injury to federalism and federal-state comity caused by subjecting the head of one of the largest state agencies in the country to criminal contempt without affording defendants the constitutionally required procedural protections.

Because the State of Texas is currently accruing $100,000 in daily fines, and because defendants have a strong likelihood of success on appeal, the state defendants respectfully request that this Court stay the contempt order and further proceedings in the district court pending their appeal and, in the meantime, rule on their motion for an administrative stay as soon as possible and, at the latest **by 5 p.m. on Wednesday, April 17, 2024** to avoid imposition of another $100,000 in fines.

## STATEMENT OF FACTS

### I. The district court enters a broad injunction over Texas's foster care system and this Court repeatedly narrows its scope.

In 2011, plaintiffs sued alleging that the administration of Texas's foster care system violated the substantive due process rights of children in foster care. *M.D. ex rel. Stukenberg v. Abbott* ("*Stukenberg I*"), 907 F.3d 237, 246, 250 (5th Cir. 2018). The district court ultimately agreed and "entered an expansive injunction mandating dozens of specific remedial measures." *Id.* at 271.

The state defendants appealed the injunction and filed an emergency motion for stay pending appeal, which this Court ultimately granted. *Stukenberg I*, 907 F.3d at 247. On the merits, this Court affirmed the district court's liability ruling, but held that the injunction was "significantly overbroad." *Id.* at 271.

Many of the remedial orders "aim[ed] too high"—they might've "reflect[ed] the 'best practices' of the child-welfare community or the policy preferences of the district court, but they [went] far 'beyond what [was] minimally required to comport with the Constitution.'" *Stukenberg I*, 907 F.3d at 272.

After emphasizing the significant "federalism concerns" created by granting a federal court "near-perpetual oversight of an already-complex child-welfare regime," this Court remanded the case with instructions to narrow numerous aspects of many of the remedial orders. *Stukenberg I*, 907 F.3d at 271, 287–88.

The district court modified its injunction on remand, and defendants appealed again. Once again, this Court invalidated multiple portions of the remedial orders. One remedial order "reinserted" a provision similar to one the Court had eliminated in the first appeal. *M.D. ex rel. Stukenberg v. Abbott* ("*Stukenberg II*"), 929 F.3d 272, 277 (5th Cir. 2019). Another required defendants to implement a "multimillion-dollar computer-system overhaul," demanding "best practice[s]" rather than compliance with "the constitutional floor." *Id.* at 279.

This Court proposed changes to cure the overbroad injunction and remedial orders and directed the district court to "begin implementing, without further changes, the modified injunction with the alterations [this Court] made." *Stukenberg II*, 929 F.3d at 281.

Within months, the district court issued an order expanding the injunction to prohibit defendants from moving a category of children from

one home to another without court permission. *M.D. ex rel. Stukenberg v. Abbott* ("*Stukenberg III*"), 977 F.3d 479, 482 (5th Cir. 2020). Defendants appealed a third time, and this Court reversed, chiding the district court for "disregard[ing]" its "explicit directives." *Id.* at 483. It remanded with instructions to once again implement the injunction "without further changes." *Id.* at 483.

## II. Defendants devote significant effort and resources to complying with the district court's remedial orders, yet plaintiffs seek contempt.

In the nearly four years since the Court last saw this case, the state defendants have devoted enormous efforts and resources to cooperating with the two court-appointed monitors and complying with the district court's structural injunction and more than 60 accompanying remedial orders. Compliance with many remedial orders has approached perfection.[1] For others, compliance has steadily and markedly improved over time, and has reached impressive levels given the massive scale of

---

[1] *See, e.g.*, Dkt. 1518 at 11–20 (defendants' motion for relief from judgment noting that the monitors' reports establish that defendants are over-90-percent compliant with at least a dozen specific remedial orders).

the state defendants' operations and the lofty scope of the district court's orders.[2]

Nevertheless, in June 2023, plaintiffs moved for an order at the repeated invitation of the district court to show cause why the state defendants shouldn't be held in contempt, alleging noncompliance with a few of the remedial orders. Dkt. 1376. Plaintiffs amended their motion four times over the following four months, expanding their allegations each time to cover additional remedial orders. Dkts. 1404, 1419, 1420, 1427.

The state defendants responded that (1) plaintiffs failed to carry their prima facie burden because their allegations concerned matters that were beyond the scope of the remedial orders—or at least not clearly spelled out by the remedial orders—and (2) defendants had defenses to contempt, including their substantial compliance with the remedial orders. Dkt. 1429 at 9–43.

As relevant here, Remedial Order 3 includes requirements to "ensure that reported allegations of child abuse and neglect" are

---

[2] *See*, *e.g.*, Dkt. 1318 at 47 (compliance with Remedial Order 3 has "measurably improved over time" and "often resulted in an appropriate disposition").

"investigated," timely "commenced and completed," and "conducted taking into account at all times the child's safety needs." Dkt. 606 at 2; *see* Dkt. 1560 at 284–85.   Remedial Order 10 relatedly includes requirements to "complete Priority One and Priority Two child abuse and neglect investigations . . . within 30 days of intake." Dkt. 606 at 3.

The state defendants argued that plaintiffs couldn't make out a prima facie case of contempt by pointing to a handful of specific investigations that the monitors determined reached the wrong result or took too few investigative steps under the circumstances—especially given that those same monitors *agreed* with the resolution of nearly 95 percent of abuse-and-neglect investigations they reviewed. *See* Dkt. 1429 at 9–16.

The district court issued a show cause order in September and held a contempt hearing in December 2023.

In February 2024, the state defendants filed a Rule 60(b)(5) motion for relief from judgment.   They explained that they had "undertaken extraordinary measures to satisfy the [district court's] orders—spending over $100 million on compliance efforts in the process." Dkt. 1518 at 1. They also observed that the Supreme Court has cautioned that courts

imposing institutional-reform injunctions should ensure that "'responsibility for discharging the State's obligations is returned promptly to the State and its officials' when the circumstances warrant," particularly given the "sensitive federalism concerns" such injunctions raise. Dkt. 1518 at 1–2 (quoting *Horne v. Flores*, 557 U.S. 433, 447–48 (2009)). The state defendants sought targeted relief from 12 of the district court's remedial orders that—by the monitors' own reports— defendants' compliance has consistently exceeded 90 percent. Dkt. 1518 at 1.

## III. The district court holds the executive commissioner in contempt.

On April 15, 2024, the district court issued a 427-page order finding the executive commissioner of HHSC in contempt of Remedial Orders 3 and 10. Dkt. 1560 at 280. Regarding Remedial Order 3, the district court ordered HHSC to "pay $50,000 per day until HHSC agency leadership":

[1] certifies that all PI investigations involving at least one PMC child closed from December 4, 2023 until the date of the State's certification, are substantially compliant with the Remedial Order 3 AND

[2] concurrently produce[s] to the Monitors the list of all PI investigations involving at least one PMC child closed between December 4, 2023 and the date of the State's certification.

8

Dkt. 1560 at 422.

Regarding Remedial Order 10, the district court ordered HHSC to

"pay $50,000 per day until HHSC agency leadership":

> [1] certifies that all open PI investigations involving at least
> one PMC child are substantially compliant with Remedial
> Order 10 AND
>
> [2] concurrently produce[s] to the Monitors the evidence upon
> which the verification is based including [a non-
> exhaustive list of data].

Dkt. 1560 at 422–23.

The district court imposed its $100,000-per-day penalty effective

immediately, and explained that although the penalty would "be

suspended upon complete submission" of the certifications and data

described above, the district court would hold a "compliance hearing" in

June at which, "absent substantial compliance, any previously abated

fines may be reinstated." Dkt. 1560 at 422–24.

In addition, the district court made clear that it would also be

"carrying forward" multiple issues raised in plaintiffs' show-cause

motion—initially filed nearly a year before—including a request for the

district court to impose a receivership over the Texas foster care system

and the numerous other asserted bases for contempt, including

"caseworker caseloads," "heightened monitoring," and "psychotropic medications." *See* Dkt. 1560 at 424.

The next day, on April 16, 2024, the state defendants filed an emergency motion for a stay pending appeal in the district court, seeking a stay as soon as possible and an administrative stay by 6 p.m. that day. Dkt. 1562. After the district court denied the motion, Dkt. 1563, the state defendants filed this stay motion given the irreparable harm caused by the continually accruing $100,000-per-day fines.

## Legal Standard

The grant of a stay pending appeal depends on four factors, with the first two being the "most critical":

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;

(2) whether the applicant will be irreparably injured absent a stay;

(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and

(4) where the public interest lies.

*Tex. Democratic Party v. Abbott*, 961 F.3d 389, 397 (5th Cir. 2020).

In sum, a stay pending appeal is warranted where, as here, the movant has a strong likelihood of success on the merits and the equities

otherwise favor a stay. *See Valentine v. Collier*, 956 F.3d 797, 801 (5th Cir. 2020). When the State is seeking a stay pending appeal, "its interest and harm merge with that of the public." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017).

## ARGUMENT

A stay pending appeal is vital to prevent further damage to federal-state comity and to protect the state defendants from daily fines of $100,000.

Most important, the state defendants are very likely to succeed on the merits of their appeal because the district court reversibly erred in several fundamental respects. It erred in holding that plaintiffs carried their heavy burden to make the *prima facie* showing required to hold the state defendants in contempt. It erred in erroneously rejecting multiple defenses to the contempt allegations—including that the defendants *have* substantially complied with Remedial Orders 3 and 10. And it erred in effectively imposing criminal contempt without providing the constitutionally required due-process protections.

Absent a stay, the six-figure daily fines will redound to the detriment of the public interest (which, for purposes of the stay factors,

merges with harm to defendants, who are arms of the state).  Subjecting state officials to what amounts to a perpetual regime of criminal contempt without the constitutionally required protections and imposing heavy daily fines pose grave federal-state comity and federalism concerns.  The public interest will suffer from the harm to the state defendants' budgets and operations, while plaintiffs would suffer no harm if a stay were to issue.

The Court should stay the contempt order and all further proceedings in the district court—including the June hearing contemplated by the order—pending resolution of the state defendants' appeal.  At minimum, the Court should administratively stay the order while it considers the motion for a stay pending appeal.

## I.    Defendants are highly likely to succeed on appeal.

### A.    Plaintiffs didn't make a *prima facie* showing of noncompliance and defendants have substantially complied regardless.

Defendants will very likely prevail in their appeal of the district court's contempt order.  Contempt is a "severe remedy," *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802 (2019), which must be "exercised with restraint and discretion." *Hornbeck Offshore Servs., LLC v. Salazar*, 713

F.3d 787, 792 (5th Cir. 2013). That's particularly true here where the alleged contemnor is a state actor in federal court. *See Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (federal courts must be "mindful of the 'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law'").

To demonstrate contempt, plaintiffs must prove by clear and convincing evidence that (1) a court order was in effect; (2) the order required certain conduct by defendants; and (3) defendants failed to comply with that order. *Texas v. Dep't of Labor*, 929 F.3d 205, 213 n.11 (5th Cir. 2019). Because contempt is a "potent weapon," it may not be used if "there is [a] *fair ground of doubt* as to the wrongfulness of the defendant's conduct"—e.g., doubt as to whether the challenged conduct falls within an order's scope. *Taggart*, 139 S. Ct. at 1801–02 (2019) (alteration in original, emphasis added); *In re Baum*, 606 F.2d 592, 593 (5th Cir. 1979) (same).

If plaintiffs carry their burden, defendants can still avoid contempt by showing substantial compliance, good-faith efforts, inability to comply, mitigating circumstances, or justification for non-compliance. *See United States v. Barnett*, 346 F.2d 99, 100 (5th Cir. 1965) (substantial

13

compliance); *Waste Mgmt. of Wash., Inc. v. Kattler*, 776 F.3d 336, 341 (5th Cir. 2015) (inability to comply); *Whitfield v. Pennington*, 832 F.2d 909, 914 (5th Cir. 1987) (mitigating circumstances).

The state defendants are highly likely to prevail on appeal because plaintiffs failed to carry their heavy burden to make a *prima facie* showing of noncompliance. In their show-cause motion, plaintiffs offered post-hoc disagreements over judgment calls about which steps the state defendants should have been taken in particular investigations. *See*, *e.g.*, Dkt. 1427 at 15. Those disagreements aren't "express or clearly inferable obligation[s]" from the district court's orders, and the district court reversibly erred in concluding otherwise. *Hornbeck Offshore Servs.*, 713 F.3d at 793.

Even if plaintiffs were right that the state defendants failed to follow the district court's orders in the approximately 35 investigations— out of thousands the state defendants conduct every year—that's far too small a sample size to constitute the "clear and convincing" evidence this Court's precedents require. *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995).

Even if plaintiffs *had* carried their burden to make a *prima facie* showing of noncompliance (and they didn't), the state defendants would still be highly likely to prevail on appeal because the evidence conclusively demonstrates that they're in substantial compliance with the remedial orders at issue (Remedial Orders 3 and 10). The district court reached the opposite conclusion only by improperly focusing on an improperly narrowly subset of investigations and class members.

In particular, the district court based its contempt order on roughly 35 investigations involving 13 children out of approximately 8,000 PMC children. Most of these investigations were conducted (i) years ago (in 2021 and 2022), (ii) by a single HHSC unit that investigates allegations of abuse involving certain types of facilities, including Home and Community-Based Services (HCS) residences, and (iii) involved alleged abused that occurred at HCS residences, which house approximately 100 of the 8,000 total PMC children at any given time. *See* Dkt. 1560 at 302–97.

Rather than focus on this small subset of investigations, the district court should have considered that, when evaluated more broadly, the state defendants are in substantial compliance with these orders as

established by the monitors' own reports.  For example, the monitors note that the state defendants' investigations have "measurably improved over time" and "often resulted in an appropriate disposition."  Dkt. 1318 at 47.  Indeed, the monitors *agreed* with the disposition of *95 percent* of the investigations.  Dkt. 1318 at 46–47.

The district court discounted its monitors' overwhelmingly positive findings and instead criticized the state defendants for failing to take actions not required by the orders in the first place—and then summarily concluded that it's "apparent" the state defendants' actions violated the orders.  For example, the district court concluded that one investigation of alleged abuse was flawed in part because the investigator—who documented that in an interview, the witness said he had engaged in a physical altercation—must not have asked the witness to "describe" the physical altercation because the investigator didn't note whether he had asked the witness to "describe" the physical alteration.  *See*, *e.g.*, Dkt. 1560 at 313 (citing Dkt. 1412 at 36).

Similarly, the district court concluded that the state defendants hadn't taken all reasonable steps to substantially comply based on a single comment from a single HHSC witness at the contempt hearing,

who agreed that HHSC could've done a "better job" in certain respects. *See* Dkt. 1560 at 417; Dkt. 1487 at 133; *see Stukenberg I*, 907 F.3d at 272 (invalidating remedial orders that might've "reflect[ed] the 'best practices' of the child-welfare community or the policy preferences of the district court" but went "far 'beyond what [was] minimally required to comport with the Constitution[]'").

The district court further erred in rejecting the state defendants' legal argument that their substantial compliance should have been viewed within the broader context of their overall achievement in complying with more than 60 remedial orders imposed at once alongside the injunction. *See* Dkt. 1560 at 419–20. The state defendants have undisputedly attained near-perfect compliance with, among others:

- Caseworker training requirements (Remedial Order 1), Dkt. 1514 (district court's order finding full compliance);

- Graduated caseload requirements for new caseworkers (Remedial Order 2), Dkt. 1518 at 11–12;

- Requirements to timely complete investigations (Remedial Order 15), Dkt. 1518 at 14–15; and

- Requirements to notify referrents and providers of investigations of abuse and neglect (Remedial Order 18), Dkt. 1518 at 16–17.

Making the meaningful strides to comply with the district court's remedial orders to improve the outcomes for the children in defendants' care, has been no small task—and the state defendants' uncontested improvement underscores the strong likelihood that this Court will reverse the contempt order.

The district court also erroneously rejected the state defendants' other defenses.  For example, the district court denied defendants' "good faith effort" defense by disregarding their many structural and policy reforms—many of which were designed and implement to create a safer and more efficient system, and better allocate resources—as nothing more than a way to "allow[] investigators to close cases more quickly." Dkt. 1560 at 418.  Similarly, the district court rejected defendant's "mitigating-circumstances" defense by discounting defendants' compliance with the vast majority of the remedial orders.  Dkt. 1560 at 419–20.  The state defendants are likely to prevail on appeal based on those defenses, as well.

### B.    The district court imposed criminal contempt without providing constitutionally required criminal process.

In addition, defendants are very likely to prevail on appeal because the district court's order imposes criminal contempt without affording

"the protections that the Constitution requires of such criminal proceedings." *Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 632 (1988).

In *International Union, United Mine Workers of America v. Bagwell*, the Supreme Court held that (1) non-compensatory fines that (2) are imposed for out-of-court conduct and (3) are based on non-compliance with a complex injunction constitute criminal contempt and can't "be imposed absent a jury trial." 512 U.S. 821, 829, 834, 836–38 (1994). All three conditions are met here.

First, the district court's order makes clear that the fines it imposed are non-compensatory. It ordered HHSC to pay all fines into the district court's registry. Dkt. 1560 at 423. And while the district court specified that those funds would be "segregate[d] and preserve[d] . . . for the benefit and use of PMC foster care children," *id.*, "[a]t no point did [it] attempt to calibrate the fines to damages caused by [defendant's allegedly] contumacious activities." *Bagwell*, 512 U.S. at 834. So the fines are non-compensatory.

Second, the district court based its contempt order on alleged conduct that occurred outside the court's presence. *Bagwell*, 512 U.S. at 833. The district court held HHSC in contempt of Remedial Orders 3 and

10 based on HHSC's Provider Investigation unit's allegedly deficient and untimely investigations into allegations of abuse and neglect at HCS group homes. That kind of "indirect" contempt requires more procedural protections than "direct" contempt, like a witness's "face-to-face refusal" to testify in court. *United States v. Wilson*, 421 U.S. 309, 315–16 (1975) (third quote); *see Bagwell*, 512 U.S. at 833 (first and second quotes).

Third, the district court held HHSC in contempt for allegedly failing to comply with a "complex injunction." *Bagwell*, 512 U.S. at 837. Far from faulting defendants for failing to perform a "discrete, readily ascertainable act[], such as turning over a key or payment of a judgment," the "court effectively policed [defendants'] compliance with an entire code of conduct that the court itself had imposed" and that "spanned a substantial portion of the State." *Bagwell*, 512 U.S. at 833, 837.

Under *Bagwell*, because the district court sanctioned "indirect contempts of [a] complex injunction[] through noncompensatory fines," the "fines challenged here are criminal." 512 U.S. at 837–38. The criminal character of the contempt is even clearer here than it was in *Bagwell* because the district court's fines began accruing *immediately—*

20

the same day the district court issued the order—so as a practical matter the state defendants had no "opportunity to reduce or avoid the fine through compliance" during at least the first day fines were accruing. *Id.* at 829 ("[A] 'flat, unconditional fine' totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance.").

What's more, the fines can be suspended only upon a certification about *past* conduct—between December 4, 2023 and the present— making clear that they're punitive (not remedial) in nature. Dkt. 1560 at 422–23; *Bagwell*, 512 U.S. at 827. And the fines, even if suspended, can be reimposed at the June hearing—further heightening their punitive nature. Dkt. 1560 at 424. Indeed, in explaining its authority to issue the contempt, the district court stated that courts have "the power to *punish* violations of their own orders," Dkt. 1560 at 21 (quoting *In re Bradley*, 588 F.3d 254, 265 (5th Cir. 2009)) (emphasis added), and punitive

contempts are quintessentially criminal. *See Bagwell*, 512 U.S. at 827–28.[3]

Before the district court imposed criminal contempt, defendants were entitled to full criminal process, including a jury trial and proof beyond a reasonable doubt. *Hicks*, 485 U.S. at 637; *Bagwell*, 512 U.S. at 838–39. Because the district court imposed criminal contempt without constitutionally required procedural safeguards, this Court will likely reverse the contempt order for that reason, too.

## II. Absent a stay, the state defendants will be irreparably injured, and a stay is in the public interest.

Equity likewise strongly favors a stay. Without one, the state defendants will incur irreparable harm from the extraordinary $100,000 daily fine imposed by the district court as they seek to comply with the district court's contempt order. That will take time, but the fines begin accruing immediately, and they can only be suspended—not eliminated.

---

[3] It is no response that the district court levied the fines against HHSC. That fact only raises other, complex issues of sovereign immunity that have never been resolved by the Fifth Circuit. *Fortin v. Comm'r of Mass. Dep't of Pub. Welfare*, 692 F.2d 790, 797–98 & n.10 (1st Cir. 1982) (suggesting that while sovereign immunity typically would not bar contempt fines, that might not be true where, as here, they are unavoidable); *accord Alberti v. Klevenhagen*, 46 F.3d 1347 (5th Cir. 1992) (upholding contempt fines without addressing the sovereign-immunity question).

*See* Dkt. 1560 at 424. And they can be suspended only if the state defendants take actions not required by the orders they're accused of violating (providing a legal certification and producing documents in support of that certification)—actions that can't be reversed even if defendants prevail on appeal.

The sheer "institutional injury to Texas from the inversion of . . . federalism principles" is itself an irreparable injury. *Texas v. EPA*, 829 F.3d 405, 434 (5th Cir. 2016). This Court has recognized the "sensitive federalism concerns" implicated when a federal court exercises "near-perpetual oversight" of an area of "core state responsibility" like the "already-complex child-welfare regime." *Stukenberg I*, 907 F.3d at 271. "An intrusion of this scale should not be taken lightly." *Id.*

Those concerns are only magnified by the district court's imposition of criminal contempt against a state official leading one of the largest state agencies in the country without constitutionally required criminal process. *In re Gee*, 941 F.3d 153, 167 (5th Cir. 2019) ("Federalism is a 'clear restraint[] on the use of equity power' because '[a] structural reform decree eviscerates a State's discretionary authority over its own program and budgets.'").

Moreover, the contempt order has put the state defendants in an untenable situation: Under the Texas Constitution, "[n]o money shall be drawn from the [Texas] Treasury but in pursuance of specific appropriations made by law." Tex. Const. art. VIII, § 6. The Texas Legislature has authorized the payment of small, ordinary-course judgments, but has limited such payments to $250,000—an amount that order will exceed by tomorrow. *See* General Appropriations Act § 16.04(b)(3) (May 20, 2023). So it's not even clear that the fines can be paid absent legislative action—setting up yet another point of federal-state friction.

The other factors point towards a stay, too. Because defendants are state actors, their "interest and harm merge with that of the public." *Veasey*, 870 F.3d at 391. The "proper expenditure" of state funds and "efficient operation" of state institutions are matters of public interest adversely affected by the contempt order's imposition of fines and costly compliance measures. *Hamer v. Brown*, 831 F.2d 1398, 1402 (8th Cir. 1987) (first quote); *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 381 (1992) (second quote).

24

Meanwhile, a stay won't harm plaintiffs. The funds that would otherwise be used to pay contempt fines will continue to be spent in the ordinary course to serve the children in the state defendants' care. Even with a stay in place, defendants still will be required to comply with the remedial orders and protect the children in their care—which they have consistently strived in good faith to do.[4]

## CONCLUSION

For these reasons, this Court should issue a stay pending appeal of the district court's contempt order and all other proceedings in the district court. In the meantime, defendants respectfully ask this Court to temporarily stay the district court's order while considering this motion for a stay pending appeal.

---

[4] The Court may stay the district court's proceedings pending appeal for the reasons explained above. *See In re U.S. Bureau of Prisons*, 918 F.3d 431, 436–38 (5th Cir. 2019) (holding contempt order is appealable final order under 28 U.S.C. § 1291). As *In re Landry*, 83 F.4th 300, 305 (5th Cir. 2023), confirms, it would also be appropriate to issue a writ of mandamus. If necessary, defendants ask the Court to construe this emergency motion as a mandamus petition.

Date:  April 16, 2024

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

AARON NIELSON
Solicitor General

JAMES LLOYD
Deputy Attorney General for Civil
Litigation

*/s/ Lanora Pettit*
LANORA PETTIT
Principal Deputy Solicitor General

KIMBERLY GDULA
Chief
General Litigation Division

KARL E. NEUDORFER
Assistant Attorney General
Administrative Law Division

CLAYTON R. WATKINS
Assistant Attorney General
Administrative Law Division

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548, Capitol Station
Austin, Texas 78711
Telephone: (512) 463-2120
Facsimile: (512) 370-0667
*lanora.pettit@oag.texas.gov*

Respectfully submitted,

*/s/ Allyson N. Ho*
ALLYSON N. HO
BRADLEY G. HUBBARD
STEPHEN J. HAMMER
SAVANNAH SILVER
JASON MUEHLHOFF

GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone: (214) 698-3100
Facsimile: (214) 571-2900
*aho@gibsondunn.com*

PRERAK SHAH

GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, Texas 77002
Telephone: (346) 718-6600
Facsimile: (346) 718-6620
pshah@gibsondunn.com

ATTORNEYS FOR DEFENDANTS-APPELLANTS

**CERTIFICATE OF SERVICE**

I certify that, on April 16, 2024, a true and correct copy of the foregoing motion was served via CM/ECF on all counsel of record.

*/s/ Allyson N. Ho*
Allyson N. Ho

**CERTIFICATE OF CONFERENCE**

I certify that counsel for defendants contacted counsel for plaintiffs, who confirmed that plaintiffs oppose the requested relief and plan to file an opposition. *See* 5th Cir. R. 27.4.

*/s/ Allyson N. Ho*
Allyson N. Ho

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the typeface requirements of Rule 32(a)(5) and the typestyle requirements of Rule 32(a)(6), *see* Fed. R. App. P. 27(d)(1)(E), because it was prepared in 14-point New Century Schoolbook, a proportionally spaced typeface, using Microsoft Word for Microsoft 365. This motion complies with the type-volume limitation of Rule 27(d)(2)(A) because it contains 4,697 words, excluding the parts exempted by Rule 32(f).

I certify that: (1) any required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission of this document is an exact copy of any corresponding paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus-scanning program and is free of viruses.

I also certify that the facts supporting emergency consideration of this motion are true and complete. *See* 5th Cir. R. 27.3.

/s/ *Allyson N. Ho*
Allyson N. Ho