No. 24-40248

# In the United States Court of Appeals for the Fifth Circuit

M. D., by next friend Sarah R. Stukenberg; D. I., by next friend Nancy G. Pofahl; Z. H., by next friend Carla B. Morrison; S. A., by next friend Javier Solis; A. M., by next friend Jennifer Talley; J. S., by next friend Anna J. Ricker; K. E., as next friend John W. Cliff, Jr.; M. R., as next friend Bobbie M. Young; J. R., as next friend Bobbie M. Young; H. V., by next friend Anna J. Ricker; P. O., as next friend Anna J. Ricker; L. H., as next friend Estela C. Vasquez; C. H.; S. R., as next friend Bobbie M. Young; S. S., as next friend Estela C. Vasquez; A. R., as next friend Tom McKenzie, individually and on behalf of all others similarly situated,

*Plaintiffs – Appellees*,

v.

Greg Abbott, in his official capacity as Governor of the State of Texas; Cecile Erwin Young, in her official capacity as Executive Commissioner of the Health and Human Services Commission of the State of Texas; Stephanie Muth, in her official capacity as Commissioner of Texas Department of Family and Protective Services,

*Defendants – Appellants*.

On Appeal from the U.S. District Court for the Southern District of Texas, Corpus Christi Division, Case No. 2:11-cv-84

**Reply in Support of Defendants' Emergency Motion for Administrative Stay Pending Resolution of Motion for Stay Pending Appeal and Motion for Stay Pending Appeal**

Ken Paxton
*Attorney General of Texas*

Brent Webster
*First Assistant Attorney General*

Aaron Nielson
Lanora Pettit
Kimberly Gdula
Karl E. Neudorfer
Clayton R. Watkins
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711
Telephone: (512) 463-2120

Allyson N. Ho
*Counsel of Record*
Bradley G. Hubbard
Stephen J. Hammer
Gibson, Dunn & Crutcher LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone: (214) 698-3100
aho@gibsondunn.com

Prerak Shah
Gibson, Dunn & Crutcher LLP
811 Main Street, Suite 3000
Houston, Texas 77002
Telephone: (346) 718-6600

Counsel for Defendants-Appellants

# TABLE OF CONTENTS

Page

Table of Authorities ................................................................................ ii

Introduction ............................................................................................. 1

Argument ................................................................................................. 3

    I.    Defendants are highly likely to succeed on appeal. .............. 3

        A.    At minimum, the state defendants are in substantial compliance with Remedial Orders 3 and 10 so contempt is unjustified. ............................... 3

        B.    The district court imposed criminal contempt—and there's no dispute that it failed to provide the procedural protections required to do so. ..................... 7

    II.   Defendants will suffer irreparable harm absent a stay. ..... 12

Conclusion ............................................................................................. 14

Certificate of Service ............................................................................ 16

Certificate of Compliance ..................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Anderson v. Sch. Bd. of Madison Cnty.*,
   517 F.3d 292 (5th Cir. 2008) ............................................................... 6

*Hicks ex rel. Feiock v. Feiock*,
   485 U.S. 624 (1988) ........................................................................... 11

*Freedom From Religion Found., Inc. v. Mack*,
   4 F.4th 306 (5th Cir. 2021) .................................................................. 2

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
   512 U.S. 821 (1994) ............................................................. 7, 8, 9, 11

*Morrow v. Harwell*,
   768 F.2d 619 (5th Cir. 1985) ............................................................. 13

*M.D. ex rel. Stukenberg v. Abbott*,
   907 F.3d 237 (5th Cir. 2018) ............................................................ 3, 8

*M.D. ex rel. Stukenberg v. Abbott*,
   977 F.3d 479 (5th Cir. 2020) ....................................................... 11, 13

*Tex. Democratic Party v. Abbott*,
   961 F.3d 389 (5th Cir. 2020) ............................................................. 14

*Texas v. EPA*,
   829 F.3d 405 (5th Cir. 2016) ............................................................. 13

*Veasey v. Abbott*,
   870 F.3d 387 (5th Cir. 2017) ............................................................. 13

## Other Authorities

Texas Department of Family and Protective Services,
   *88th Legislature, Regular Session Quarterly Report on
   Court Monitor Fees* (Feb. 2024) ........................................................ 6

## INTRODUCTION

Plaintiffs' response only confirms the need for a stay of the district court's extraordinary contempt order, which sanctions the Texas Health and Human Services Commission $100,000 *per day* for past conduct—notwithstanding that the state defendants have made tremendous strides under challenging circumstances and continue to prioritize the welfare of the children in their care.

Nothing in the stay pending appeal sought by the state defendants will alter their tireless work safeguarding the welfare of the children in their care and complying fully with the remedial orders. It will only allay serious federalism and public-fisc concerns while the state defendants appeal the contempt order—and they are highly likely to prevail in that appeal for two separate, independent reasons.

*First*, as the record conclusively demonstrates, defendants are at minimum in substantial compliance with the two remedial orders at issue. The district court reached the opposite conclusion only by improperly focusing on an extremely narrow subset of investigations, rather than on the state defendants' overall performance under the remedial orders at issue.

1

*Second*, the district court imposed criminal contempt—retrospective, non-purgeable fines—without providing the requisite procedural protections. Those daily fines can be "suspended" (not eliminated) only by certifying that defendants' *past conduct* substantially complied with the remedial orders and providing the monitors with data about that *past conduct*—neither of which is required by the remedial orders at issue. So the contempt order unquestionably imposes retrospective, criminal contempt—and plaintiffs don't deny that if that is so (and it is), the state defendants didn't receive the constitutionally required process.

Absent a stay, the state defendants will be irreparably harmed not only because they will continue accruing $100,000-per-day fines unless and until they take actions that aren't required by the remedial orders and that can't be undone even if they prevail on appeal. The district court's contempt order also drastically inverts ordinary federalism principles—a well-recognized irreparable injury. *See Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306, 315, 317 (5th Cir. 2021) (granting stay pending appeal and finding irreparable harm when order "treads on important federalism principles").

Plaintiffs don't meaningfully dispute that holding a governor-appointed, senate-confirmed state official in criminal contempt without providing the constitutionally required process at a minimum "raise[s] sensitive federalism concerns." *M.D. ex rel. Stukenberg v. Abbott* ("*Stukenberg I*"), 907 F.3d 237, 271 (5th Cir. 2018) ("An intrusion of this scale should not be taken lightly."). A stay pending appeal should be granted.

**ARGUMENT**

**I. Defendants are highly likely to succeed on appeal.**

**A. At minimum, the state defendants are in substantial compliance with Remedial Orders 3 and 10 so contempt is unjustified.**

The state defendants are highly likely to succeed on appeal because the record conclusively demonstrates that they're in compliance—and at minimum substantial compliance—with Remedial Orders 3 and 10. Mot. 14–16.

As to Remedial Order 3, the district court's own monitors reviewed nearly 1,000 investigations and found 95 percent compliance with respect to Residential Childcare Investigations' dispositions, Dkt. 1318 at 46–47; 94 percent compliance as to Child Protective Investigations' dispositions,

Dkt. 1318 at 46–47; and over 93 percent compliance as to Statewide Intake's conclusion that abuse and neglect did not occur, Dkt. 1318 at 36.

As to Remedial Order 10, the monitors reviewed over 1,500 investigations and concluded that 82 percent were either timely completed within thirty days or were timely completed following a justified extension. Dkt. 1496 at 60–61. That's substantial compliance by any measure.

The district court reached the opposite conclusion only by disregarding its own monitors' strong evidence of compliance and focusing instead on roughly 35 investigations conducted by a specific HHSC unit affecting 13 PMC children (less than 0.5 percent of the PMC class). Dkt. 1560 at 303–99.

The thin slice of investigations focused on by the district court can't constitute clear and convincing evidence of non-compliance with the remedial orders given the *thousands* of investigations conducted by the state defendants—with which the monitors found strong evidence of compliance. At minimum, defendants' strong overall performance under these remedial orders demonstrates substantial compliance, sufficient to rebut any *prima facie* showing of noncompliance.

The state defendants will always strive to safeguard the welfare of all children under their care. But a federal court's *post hoc* disagreement with the conduct of approximately 35 investigations (out of thousands of abuse-and-neglect investigations reviewed by the monitors) involving less than 0.5 percent of the plaintiff class is not grounds to hold state officials in contempt.

Plaintiffs' contention (at 23) that the district court's contempt order was proper because it was "targeted to" HHSC's Provider Investigations unit simply assumes without support that a court can disregard overall compliance with the remedial orders at issue when imposing contempt. But they offer no support for that view—because there is none.

When, as the law requires, defendants' compliance is properly evaluated across all "investigations" covered by Remedial Orders 3 and 10, Dkt. 606 at 2–3, it's clear that plaintiffs didn't carry their burden to make a *prima facie* showing of non-compliance by clear and convincing evidence and that—at minimum—the state defendants are in substantial compliance. Mot. 12–18.

Moreover, plaintiffs offer no response to the state defendants' other defenses to contempt, which further confirm the district court's error.

Mot. 18. For example, the state defendants have made good-faith efforts to comply with the district court's remedial orders—expending extraordinary resources in the process. *See* Mot. 1–2 (detailing steps taken to achieve substantial compliance); Dkt. 1483-48 (describing state defendants' work with each other and the Texas Legislature to remedy backlogs caused by COVID-19; appropriate $17 million to "recruit and retain staff"; "strengthen notification and communication" systems; and "hold providers accountable" with fines); *see also* Dkt. 1518 (defendants' pending Rule 60(b)(5) motion).

The district court has also ordered the state defendants to pay its court monitors more than $55 million already—which comes to more than $30,000 a day.[1] The state defendants' demonstrated commitment to compliance precludes as a matter of law any finding of contempt. *See Anderson v. Sch. Bd. of Madison Cnty.*, 517 F.3d 292, 298 (5th Cir. 2008) ("good faith compliance is illustrated by" "devot[ing] a considerable amount of resources").

---

[1] Texas Department of Family and Protective Services, *88th Legislature, Regular Session Quarterly Report on Court Monitor Fees* (Feb. 2024), bit.ly/3UtlLuD.

**B. The district court imposed criminal contempt—and there's no dispute that it failed to provide the procedural protections required to do so.**

The district court impermissibly ordered retrospective, criminal contempt without providing the constitutionally required process. Indeed, the contempt order checks all the boxes the Supreme Court has identified as characterizing criminal contempt by imposing (1) non-compensatory fines, (2) for out-of-court conduct, (3) based on non-compliance with a complex injunction. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829, 834, 836–38 (1994); Mot. 18–22.

Plaintiffs don't dispute that, if the district court *had* imposed criminal contempt, the state defendants would be entitled to relief. Instead, they argue only (at 24–28) that the sanctions were civil. But that argument doesn't withstand scrutiny because it's premised on (1) a misunderstanding of *Bagwell* and (2) a misreading of the district court's order.

1. Plaintiffs argue (at 25–28) that no individual factor considered in *Bagwell* is sufficient to make a contempt order criminal. But that's beside the point. *Bagwell* holds that the *combination* of those factors is what's decisive. 512 U.S. at 829, 836–38. All three factors that

made the contempt criminal in *Bagwell* are present here—and plaintiffs barely argue otherwise.

Plaintiffs don't dispute that the fines here are non-compensatory and were imposed for out-of-court conduct. *See* Resp. 25–27. And while plaintiffs insist (at 27) that the remedial orders "are hardly complex," the labyrinthine record assessing the state defendants' compliance efforts refutes that assertion. Like in *Bagwell*, here the district court imposed "an entire code of conduct" on the contemnors and was using its contempt powers to police compliance with that code. *See* 512 U.S. at 837. If anything, the injunction and remedial orders in this case—which dictate in granular detail the management of an "already-complex child-welfare regime," *Stukenberg I*, 907 F.3d at 271—far exceed the *Bagwell* injunction in complexity.

Plaintiffs assert (at 27) that the "comprehensive" nature of the injunction and remedial orders is irrelevant because the district court held the state defendants in contempt for violating only two of its remedial orders. Even if that were the right way to evaluate an injunction's complexity under *Bagwell* (it's not, *see* 512 U.S. at 835–36 ("[i]n a case like this involving an injunction that prescribes a detailed

8

code of conduct, it is more appropriate to identify the character of the entire decree")), Remedial Orders 3 and 10 are highly complex even when considered in isolation. They not only mandate that investigations be timely commenced and completed, but also require them to be conducted "taking into account at all times the child's safety needs"—an inherently complex and fact-dependent undertaking. Dkt. 606 at 2.

Under *Bagwell*, criminal-contempt safeguards are required when contempt depends on complex factfinding, 512 U.S. at 833–34, and the district court's 427-page contempt order demonstrates that this is precisely a situation that calls for the heightened procedural safeguards required for criminal contempt.

2. Plaintiffs also contend (at 25) that the contempt isn't criminal because the fines are designed to coerce compliance. But *Bagwell* makes clear that even a compliance-promoting fine is criminal if it's backward-looking and can't be purged: "Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge." *Bagwell*, 512 U.S. at 829. That critical feature is absent here.

The district court's sanctions are predominantly retrospective. Plaintiffs' insistence (at 20) that, "[i]f . . . the State can show substantial

9

compliance *now*, it should simply do so," ignores the backward-looking nature of the contempt order. The order doesn't require substantial compliance *now*—it requires a certification about substantial compliance *in the past*.

That order affords the state defendants no way to purge the contempt as to investigations completed in the past. The contempt order imposes an immediate and ongoing fine until HHSC's agency leadership makes a certification about "all PI investigations involving at least one PMC child closed from December 4, 2023 until the date of the State's certification" "and all open PI investigations involving at least one PMC child." Dkt. 1560 at 422–23. Nothing the state defendants do today, tomorrow, or at any point in the future can change how those investigations were conducted in the past.

Even if the state defendants certify their past compliance, the order still doesn't allow them to *purge* the contempt. Instead, the contempt order merely *suspends* payment of the fines—which are subject to being "reinstated" at the June compliance hearing if the district court disagrees with the certifications. Dkt. 1560 at 422–24. Without the opportunity to

purge, contempt is criminal, not civil. *See Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 633 (1988).

The Supreme Court has made clear that "a 'flat, unconditional fine' totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance," *Bagwell*, 512 U.S. at 829, and plaintiffs don't dispute that the state defendants have no avenue to escape the fines that began accruing the day the district court entered its order.

Plaintiffs contend (at 26) that even if the fines aren't "completely avoidable," contempt still isn't criminal as long as there's a chance that compliance could *reduce* the ultimate total of fines. That can't be right, because it would insulate criminal-contempt orders merely by combining retrospective and non-purgeable fines with future compliance obligations that can lessen the total fine. *Cf. M.D. ex rel. Stukenberg v. Abbott* ("*Stukenberg III*"), 977 F.3d 479, 483 (5th Cir. 2020) ("Accepting Plaintiffs' approach would replace judicial hierarchy with judicial anarchy."). That would render a dead letter the requirements long in place to ensure criminal contempt orders comply with due process.

## II. Defendants will suffer irreparable harm absent a stay.

The state defendants will suffer irreparable harm without a stay because they will continue accruing $100,000-per-day fines that can be suspended (not eliminated) only if the state defendants take actions that aren't required by the remedial orders and that can't be undone even if the state defendants prevail on appeal. Mot. 22–23. Plaintiffs' attempts to downplay the harmful effects of the contempt order fall flat.

Plaintiffs' main response (at 28–29)—that "any fines paid can be refunded"—misses that this is no run-of-the-mill case involving recoverable expenses. Instead, the district court's order requires an immediate and massive diversion of public money that—as plaintiffs don't dispute—the state defendants may not even be able to pay under Texas law without legislative authorization. Mot. 24.

Plaintiffs' attempt (at 29) to downplay the obvious federalism concerns raised by the contempt order is equally misguided. By imposing massive daily fines against the executive commissioner of a vast state agency that has made great progress, and has as its highest priority the welfare of children in its care, the contempt order causes the state defendants irreparable harm by breaching basic federalism principles.

*See Texas v. EPA*, 829 F.3d 405, 434 (5th Cir. 2016). Those concerns are only sharpened when—as here—"injunctive relief that affirmatively commands specific future behavior" is demanded "under the threat of the court's contempt powers." *Morrow v. Harwell*, 768 F.2d 619, 627 (5th Cir. 1985).

Even suspending the immediate payment of the fines requires actions beyond the requirements of the remedial orders—despite this Court's repeated admonition that the district court "implement[] the permanent injunction in this case 'without further changes.'" *Stukenberg III*, 977 F.3d at 481. The state defendants are at minimum in substantial compliance with all the remedial orders—including the two remedial orders at issue here—as they repeatedly have stated in testimony and in briefing.

Plaintiffs further err in urging the Court (at 30–31) to ignore the well-established rule that state defendants' "interest and harm merge with that of the public." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017). In fact, this Court has rejected plaintiffs' theory that the public interest lies with the party raising constitutional claims instead of lying

13

with the State itself. *See Tex. Democratic Party v. Abbott*, 961 F.3d 389, 412 (5th Cir. 2020).

Finally, plaintiffs lack any basis for their assertion (at 29–30) that a stay will cause them irreparable harm. Even with a stay in place, the state defendants will continue (and be required to continue) complying with the court's injunction and all remedial orders. Mot. 25. A stay here will have no effect on the enormous amounts of time, energy, and resources the state defendants continue to expend to safeguard the welfare of the children in their care and comply with the court's orders.[2]

## CONCLUSION

This Court should issue a stay pending appeal of the district court's contempt order and all other proceedings in the district court.

---

[2] Because the district court has threatened to "reinstate[]" "any previously abated fines" at its June 2024 hearing, Dkt. 1560 at 424—which would amplify the federalism harms—the Court should continue to stay further proceedings in the district court.

14

Date: April 24, 2024

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

AARON NIELSON
Solicitor General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

 /s/ Lanora Pettit
LANORA PETTIT
Principal Deputy Solicitor General

KIMBERLY GDULA
Chief
General Litigation Division

KARL E. NEUDORFER
Assistant Attorney General
Administrative Law Division

CLAYTON R. WATKINS
Assistant Attorney General
Administrative Law Division

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548, Capitol Station
Austin, Texas 78711
Telephone: (512) 463-2120
Facsimile: (512) 370-0667
*lanora.pettit@oag.texas.gov*

Respectfully submitted,

 /s/ Allyson N. Ho
ALLYSON N. HO
BRADLEY G. HUBBARD
STEPHEN J. HAMMER
SAVANNAH SILVER
JASON MUEHLHOFF

GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone: (214) 698-3100
Facsimile: (214) 571-2900
*aho@gibsondunn.com*

PRERAK SHAH

GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, Texas 77002
Telephone: (346) 718-6600
Facsimile: (346) 718-6620

ATTORNEYS FOR DEFENDANTS-APPELLANTS

**CERTIFICATE OF SERVICE**

I certify that, on April 24, 2024, a true and correct copy of the foregoing reply was served via CM/ECF on all counsel of record.

/s/ *Allyson N. Ho*
Allyson N. Ho

**CERTIFICATE OF COMPLIANCE**

I certify that this reply complies with the typeface requirements of Rule 32(a)(5) and the typestyle requirements of Rule 32(a)(6), *see* Fed. R. App. P. 27(d)(1)(E), because it was prepared in 14-point New Century Schoolbook, a proportionally spaced typeface, using Microsoft Word for Microsoft 365. This reply complies with the type-volume limitation of Rule 27(d)(2)(C) because it contains 2,560 words, excluding the parts exempted by Rule 32(f).

I certify that: (1) any required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission of this document is an exact copy of any corresponding paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus-scanning program and is free of viruses.

/s/ *Allyson N. Ho*
Allyson N. Ho