# YetterColeman LLP

September 2, 2024

Lyle W. Cayce
Clerk of Court
U.S. Court of Appeals for the Fifth Circuit
600 S. Maestri Place, Suite 115
New Orleans, Louisiana 70130-3408

      Re:    *M.D. ex rel. Stukenberg v. Abbott,* No. 24-40248

Dear Mr. Cayce:

      On behalf of the appellee class of Texas foster children, we respectfully request that the Clerk's office forward this letter with its attachment to the panel in this case, which was submitted after oral argument on August 5, 2024.

      In support of their request for reassignment, appellants cite media reports as authorities reflecting the public's supposed perceptions of the district court's role in enforcing the remedial orders, suggesting that comments by the district court are responsible for negative media coverage of the foster care system rather than appellants' conduct. Their opening brief cites to a 2023 *Texas Tribune* article. *See* Op. Br. 57 & n.15 (May 28, 2024). And in reply, appellants supplemented their argument by citing to a 2024 *Texas Tribune* article, newly published the day before. *See* Reply Br. 23 (July 9, 2024).

      Given appellants' reliance on media authorities, we respectfully enclose a copy of a new editorial in the *Houston Chronicle* regarding a child in the State's Home & Community-Based Services (HCS) facilities, which are the subject of the contempt order. *See* "Texas wastes time fighting foster care lawsuit. Now a 15-year-old is fighting for his life," Hous. Chron. (Sept. 1, 2024), *avail. at* https://www.houstonchronicle.com/opinion/editorials/article/texas-foster-care-janis-jack-abuse-19726413.php.

                                  Respectfully yours,

                                    R. Paul Yetter

                                    Counsel for Plaintiff/Appellee Class

cc: All counsel of record via CM/ECF

# Attachment

OPINION//EDITORIALS

# Texas wastes time fighting foster care lawsuit. Now a 15-year-old is fighting for his life.

By The Editorial Board, *Houston Chronicle*, Sep 1, 2024

In a hospital bed in Houston right now there is a child clinging to life, a child who narrowly escaped the cruel form of "care" at a facility licensed by the state of Texas that resembled nothing short of a drug den when a volunteer showed up a few months ago for a checkup.

The volunteer, a court-appointed special advocate, was greeted at the door of the facility not by staff, but by a child, according to a letter that the boy's ad litem attorney sent Aug. 9 to the state and shared with the editorial board. Medicines were in unlabeled bins out in the open on the countertop. Feces painted the wall. Outside, urine-soaked mattresses were strewn in the backyard.

To the volunteer's alarm, she found the child, a 15-year-old boy, "'zoned out' and uncommunicative." She shared her concerns and prompted an emergency special hearing. The child, referred to in the letter only as M.R.F., was immediately removed from the facility operated by Maofu Home Health Services.

But because this is Texas, he was immediately placed in another facility, owned by the very same franchise: Maofu Home Health Services. The company didn't respond to multiple requests for comment.

And the state? Well, the folks at the top, at least, seem annoyed that unsavory anecdotes such as this keep emerging, more than a decade after a class-action lawsuit revealed widespread abuse of children in the state's foster care facilities. So tired are these Texas child welfare officials that they recently resorted to the nuclear option in trying to end the litigation once and for all: They asked an appeals court to kick the presiding judge off the case.

"The record is replete with instances of hostile remarks and actions toward the state defendants and their counsel," the state argued in a June filing to the U.S. 5th Circuit Court of Appeals.

How hostile, we wonder, is the senior federal judge, Janis Graham Jack, or any judge for that matter, allowed to be in the face of never-ending child endangerment? How sternly, we ask, should a judge respond to bureaucratic foot-dragging that callously prolongs child suffering?

America's system of justice demands a lot of our judges by way of ethics and fairness.

We don't think it requires any honest, feeling, thinking judge to look the other way in cases of rape or neglect or the years-long systemic overmedicating of children on psychotropic drugs.

And that's what our conservative state is asking of the conservative jurists on the 5th Circuit: Look the other way. Let us close the drapes to the drug dens we lump in with real community-based care facilities**.** Let us remove the best watchdog that Texas foster kids ever had: Judge Jack, a senior jurist who, rather than enjoy the full-time leisure of retirement, continues to preside over this one case for going on 13 years until she can be sure the kids have basic safety and recourse.

They're not safe, not yet. It's true that Texas has made real reforms over the years, particularly after Gov. Greg Abbott wrote to the Department of Family and Protective Services and the Health and Human Services Commission in 2020, telling them to stop fighting Jack's orders to avoid racking up more fines. Abbott even went on a Rio Grande Valley radio station, the Texas Tribune reported, and pledged that Texas would do "exactly" what Jack ordered.

Where's that tone, governor? Where's that leadership? Where's your attention? It's not with the kids being abused on your watch.

It's not with the thousands of "forgotten children," as Jack described them in her 2015 landmark ruling, adding that they "almost uniformly leave state custody more damaged than when they entered it."

We actually argue that Jack has been too patient with the state. At every turn, she has given Texas a chance to do better and, only occasionally, fined them when they haven't. Three times she has found the state in contempt for its lack of progress. While Texas argues it has tried "in good faith" to comply, the state has spent far more time fighting the costly class-action lawsuit to reform its broken foster care system than it has actually fixing it.

The boy who was found in such deplorable conditions only got worse. At the urging of the court, DFPS found a potential new placement at a third facility. When the boy's caseworker visited him the morning of Monday, Aug. 5, he had vomited earlier that morning and he then continued vomiting throughout the night.

On Tuesday, Aug. 6 the child was transported to a Sugar Land emergency room. Doctors took one look at his kidneys and liver and life-flighted him to Children's Memorial Hermann Hospital in Houston where he was admitted with a failing liver, a swollen brain and jaundice. Those are all clear signs of toxic ingestion. According to the letter, medical professionals and poison control suspect that the boy's caretakers slowly and steadily over-medicated him. As of this writing, he remains in critical condition.

In an emailed statement to the editorial board, the Texas Health and Human Services Commission, which oversees state-run facilities like group homes, said their top priority is protecting the health, safety and wellbeing of people served by the facilities and providers they regulate. They are actively investigating Maofu Home Health Services and said that if the provider did not follow all regulations, it will be cited for a regulatory violation and required to come into compliance.

Forgive us if we're not exactly feeling confident in an agency with a dismal track record of slow and shoddy results. A few months ago, Judge Jack shared a 427-page contempt order that outlined in gut-churning detail how HHSC's botched investigations endanger foster children with disabilities, especially kids who require medication for mental illness.

From broken bones, to sexual assault and being shocked by Tasers, the evidence of abuse is ample and appalling. Yet, thanks to Texas' convoluted system of investigations, many reports have gone ignored or disregarded, lost in a tangled mess of unclear jurisdiction. The investigations that do happen often take more than a year to complete and are remarkably careless. Victims, witnesses and alleged perpetrators are interviewed months after the fact, if at all, and evidence found in prior investigations is often ignored. Unlike DFPS investigators who delve deeply into a provider's history, HHSC investigators don't conduct such background checks, the monitors' report said. Under a new policy adopted in June, HHSC investigators also no longer put into their final reports an explanation of why they ruled a child's outcry to be inconclusive or unfounded.

Judge Jack has asked the state to cough up $100,000 per day for its violations. That is, until HHSC officials can certify that they're promptly and competently investigating abuse allegations.

Rather than helping an understaffed and underfunded HHSC come into compliance, the state is paying a Dallas lawyer $1,300 an hour to persuade the 5th Circuit Court of Appeals that Texas is *already* doing everything right. The conservative court is poised to agree with the state on the sanction. But the state is going one step further, arguing that Jack isn't impartial enough and

should be bumped from the case. The state attorney general's office did not respond to a request for comment.

For Paul Yetter, the Houston business attorney who has represented the plaintiffs pro bono since the case was filed in 2011, the recent harrowing case illustrates what's at stake should the court take Texas' side.

"It's a tragic example of why the reforms being enforced by Judge Jack are so critical," he told us. "Over-medication is a chronic problem in the Texas system and puts vulnerable children at risk. It's just shocking."

The fines, he said, are a clear message. "Whether or not you care about child safety, you at least have to act like you do."

If only Texas would spend as much energy and taxpayer money working to do right by the thousands of foster children under its care as it does trying to squirrel out of fines. Maybe then we wouldn't be here, 13 years later, still pleading for Texas to prioritize the lives and well-being of vulnerable children entrusted to its care. Maybe then a 15-year-old wouldn't be in a hospital bed in Houston, unable to swallow or communicate, and still reliant on feeding tubes.