No. 24-40248

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

M.D., BY NEXT FRIEND SARAH R. STUKENBERG; et al.,

*Plaintiffs - Appellees*,

v.

GREG ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF TEXAS; et al.,

*Defendants – Appellants*.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CIVIL ACTION NO. 2:11-CV-00084
THE HONORABLE JANIS GRAHAM JACK

_____

## FOSTER CARE ADVOCACY CENTER,
## NATIONAL DISABIITY RIGHTS NETWORK, AND
## TEXAS STATE EMPLOYEES UNION'S
## MOTION FOR LEAVE TO FILE BRIEF AS *AMICI CURIAE*

TARA GRIGG GREEN
Texas Bar No. 24094690
tara@fcactexas.org
FOSTER CARE ADVOCACY CENTER
2429 Bissonnet St., Suite 767
Houston, Texas 77005
(713) 814-3930 (Phone)
(713) 528-0888 (Fax)

*Counsel for Amici Curiae*

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

M. D., by next friend Sarah R. Stukenberg; D. I., by next friend Nancy G. Pofahl; Z. H., by next friend Carla B. Morrison; S. A., by next friend Javier Solis; A. M., by next friend Jennifer Talley; J. S., by next friend Anna J. Ricker; K. E., by next friend John W. Cliff, Jr.; M. R., by next friend Bobbie M. Young; J. R., by next friend Bobbie M. Young; H. V., by next friend Anna J. Ricker; P. O., by next friend Anna J. Ricker; L. H., by next friend Estela C. Vasquez; C. H., by next friend Estela C. Vasquez; S. R., by next friend Bobbie M. Young; S. S., by next friend Estela C. Vasquez; A. R., by next friend Tom McKenzie, individually and on behalf of all others similarly situated,
*Plaintiffs-Appellees*,

v.

Greg Abbott, in his official capacity as Governor of the State of Texas; Cecile Erwin Young, in her official capacity as Executive Commissioner of the Health and Human Services Commission of the State of Texas; Stephanie Muth, in her official capacity as Commissioner of Texas Department of Family and Protective Services,
*Defendants-Appellants*.

The undersigned counsel of record certifies that the following list of persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal.

**Plaintiffs-Appellees:**

M.D. by next friend Sarah R. Stukenberg
D.I. by next friend Nancy G. Pofahl
Z.H. by next friend Carla B. Morrison
S.A. by next friend Javier E. Solis
A.M. by next friend Jennifer Talley
J.S. by next friend Anna J. Ricker
K.E. by next friend John W. Cliff, Jr.
M.R. by next friend Bobbie M. Young
J.R. by next friend Bobbie M. Young
H.V. by next friend Anna J. Ricker
P.O. by next friend Anna J. Ricker
L.H. by next friend Estela C. Vasquez
C.H. by next friend Estela C. Vasquez
S.R. by next friend Bobbie M. Young
S.S. by next friend Estela C. Vasquez
A.R. by next friend Tom McKenzie, individually and on behalf of all others similarly situated

**Appellate and Trial Counsel:**

R. Paul Yetter
Christian J. Ward
Dori Goldman
Karla Maradiaga
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
Telephone: (713) 632-8000

Barry F. McNeil
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000

Samantha Bartosz
Stephen Dixon
Joshua Rosenthal
Elizabeth Pitman
Ira Lustbader
CHILDREN'S RIGHTS

88 Pine Street
New York, New York 10005
Telephone: (212) 683-2210

Michael Kenneth Bartosz
Rachel Brodin Nili
CHILDREN'S RIGHTS
330 Seventh Avenue, Floor 4
New York, New York 10001
Telephone: (212) 683-2210

Marcia Robinson Lowry
David Baloche
Laura Welikson
A BETTER CHILDHOOD, INC.
355 Lexington Avenue, Floor 16
New York, New York 10017
Telephone: (646) 795-4456

Richard Behrens
SHEARMAN & STERLING LLP
2601 Olive Street, Floor 17
Dallas, Texas 75201
Telephone: (214) 271-5812

**Defendants-Appellants:**       Greg Abbott, in his official capacity as Governor of the State of Texas

Stephanie Muth, in her official capacity as Commissioner of the Department of Family and Protective Services of the State of Texas

Cecile Erwin Young in her official capacity as Executive Commissioner of the Health and Human Services Commission of the State of Texas

**Appellate and Trial Counsel:**    Allyson N. Ho
Bradley G. Hubbard
John Stewart Adams
Stephen J. Hammer
Savannah C. Silver
Jason Muehlhoff
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone: (214) 698-3100

Prerak Shah
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, Texas 77002
Telephone: (346) 718-6600

Ken Paxton
Attorney General of Texas
Brent Webster
First Assistant Attorney General
Aaron Nielson
James Lloyd
Lanora Pettit
Kimberly Gdula
Karl E. Neudorfer
Clayton R. Watkins
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548, Capitol Station
Austin, Texas 78711
Telephone: (512) 463-2120

**Amici Curiae:**    Foster Care Advocacy Center
National Disability Rights Network
Texas State Employees Union

**Appellate Counsel:**

Tara Grigg Green
State Bar No. 24094690
tara@fcactexas.org
FOSTER CARE ADVOCACY CENTER
2429 Bissonnet St. #767
Houston, Texas 77005
Telephone: (713) 814-3930
Facsimile: (713) 528-0888

/s/ *Tara Grigg Green*
TARA GRIGG GREEN

*Counsel for Amici Curiae*

## MOTION FOR LEAVE TO FILE BRIEF OF AMICI CURIAE

Pursuant to Federal Rule of Appellate Procedure 29 and Fifth Circuit Rule 29.1, *amici curiae*, Foster Care Advocacy Center, the National Disability Rights Network, and the Texas State Employees Union respectfully move this Court for leave to file an amicus brief in support of Plaintiffs-Appellees. A copy of the brief Amici seek leave to file is attached hereto and submitted to the Court pending disposition of this motion for leave to file.

## IDENTITIES OF AMICI CURIAE

The Amici identified below submit the attached brief in support of the Plaintiffs' request for rehearing *en banc*. No fees have been or will be paid for the preparation and filing of this amicus brief.

For more particular information about these amici:

- *Foster Care Advocacy Center* (FCAC) is the only multidisciplinary nonprofit law office in Texas devoted to child welfare law. FCAC takes appointments from Harris County courts to represent children and parents in ongoing child welfare proceedings. FCAC staff are considered experts in "complex" child welfare cases, such as cases involving child fatalities, parents or children with intellectual disabilities, parents or children with serious mental illness, medically fragile children, dual-status youth, youth aging out of care, or transgender youth. FCAC represents approximately 400 clients per year, and a significant number of these are children in the Permanent Managing Care of the Department of Family and Protective Services.

- *National Disability Rights Network* (NDRN) is the non-profit membership organization for the federally mandated Protection and Advocacy (P&A) and Client Assistance Program (CAP) agencies for individuals with disabilities. The P&A and CAP agencies were established by the United

States Congress to protect the rights of people with disabilities and their families through legal support, advocacy, referral, and education. There are P&As and CAPs in all 50 states, the District of Columbia, Puerto Rico, and the U.S. Territories (American Samoa, Guam, Northern Mariana Islands, and the US Virgin Islands), and there is a P&A and CAP affiliated with the Native American Consortium which includes the Hopi, Navajo and San Juan Southern Paiute Nations in the Four Corners region of the Southwest. Collectively, the P&A and CAP agencies are the largest provider of legally based advocacy services to people with disabilities in the United States.

- *Texas State Employees Union* (TSEU) have members who work for the Department of Family and Protective Services and are responsible for protecting and preventing continuous abuse and harm of children that have come into the State's care. TSEU members are professionals dedicated to serving vulnerable Texans and are acutely aware of the need for reform within the agency and the foster care system.

## REASONS FOR GRANTING LEAVE

Amici are organizations who fulfill various roles with respect to protecting and advocating for the safety and wellbeing of children with disabilities in the Texas foster care system. Collectively, amici bring a breadth and depth of knowledge about how the child welfare system operates and the unique harms facing children with disabilities. This includes both a local perspective of advocates on the ground fighting day in and day out to protect the rights and improve the wellbeing of children in foster care, and a macro-perspective of how this particular population of children is situated compared to children with disabilities in other state child welfare systems. The issues before the Court directly affect the lives of those on whose behalf amici regularly litigate and advocate.

The critical function and intent of the proposed amicus brief is to protect the safety and wellbeing of disabled children in the Texas foster care system without further delay and also to support the wellbeing of Texas state employees working tirelessly on behalf of foster youth. Amici offer insights into the particular plight of children with disabilities trapped in the foster care system and some of the unique dangers they face when they do not receive timely or effective investigations. The consequences of continued and serious risk of physical and psychological harm not only affect the children, but also the employees working to help them. Based on their areas of advocacy and policy work, amici present a unique and helpful perspective to the Court and hope this perspective will assist the Court in resolving this appeal.

## PRAYER

For these reasons, the Amici respectfully request that the Court grant them leave to file an amicus curiae brief in support of the Plaintiffs-Appellees.

Respectfully submitted,

/s/ *Tara Grigg Green*
TARA GRIGG GREEN
Texas Bar No. 24094690
tara@fcactexas.org
FOSTER CARE ADVOCACY CENTER
2429 Bissonnet St., Suite 767
Houston, Texas 77005
(713) 814-3930 (Phone)
(713) 528-0888 (Fax)
*Counsel for Amici Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1ˢᵗ day of November, 2024, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent, by operation of the ECF system, to all counsel of record.

*/s/ Tara Grigg Green*
TARA GRIGG GREEN

**CERTIFICATE OF COMPLIANCE**

I certify that:

1.  This motion complies with the type-volume of 5th Cir. Loc. R. 27.4, because it contains 728 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.  This motion complies with the typeface and type-style requirements of FED. R. APP. P. 32(a)(5) and (a)(6) because it was prepared in Microsoft Office Word 2016 in 14-point font, Times New Roman type style.

*/s/ Tara Grigg Green*
TARA GRIGG GREEN

No. 24-40248

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

M.D., BY NEXT FRIEND SARAH R. STUKENBERG; et al.,
                                        *Plaintiffs - Appellees*,

v.

GREG ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF
TEXAS; et al.,
                                        *Defendants – Appellants*.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CIVIL ACTION NO. 2:11-CV-00084
THE HONORABLE JANIS GRAHAM JACK

_____

BRIEF OF AMICI CURIAE FOSTER CARE ADVOCACY CENTER,
NATIONAL DISABIITY RIGHTS NETWORK, AND
TEXAS STATE EMPLOYEES UNION
IN SUPPORT OF APPELLEES

TARA GRIGG GREEN
Texas Bar No. 24094690
tara@fcactexas.org
FOSTER CARE ADVOCACY CENTER
2429 Bissonnet St., Suite 767
Houston, Texas 77005
(713) 814-3930 (Phone)
(713) 528-0888 (Fax)

*Counsel for Amici Curiae*

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

M. D., by next friend Sarah R. Stukenberg; D. I., by next friend Nancy G. Pofahl; Z. H., by next friend Carla B. Morrison; S. A., by next friend Javier Solis; A. M., by next friend Jennifer Talley; J. S., by next friend Anna J. Ricker; K. E., by next friend John W. Cliff, Jr.; M. R., by next friend Bobbie M. Young; J. R., by next friend Bobbie M. Young; H. V., by next friend Anna J. Ricker; P. O., by next friend Anna J. Ricker; L. H., by next friend Estela C. Vasquez; C. H., by next friend Estela C. Vasquez; S. R., by next friend Bobbie M. Young; S. S., by next friend Estela C. Vasquez; A. R., by next friend Tom McKenzie, individually and on behalf of all others similarly situated,
*Plaintiffs-Appellees*,

v.

Greg Abbott, in his official capacity as Governor of the State of Texas; Cecile Erwin Young, in her official capacity as Executive Commissioner of the Health and Human Services Commission of the State of Texas; Stephanie Muth, in her official capacity as Commissioner of Texas Department of Family and Protective Services,
*Defendants-Appellants*.

The undersigned counsel of record certifies that the following list of persons and entities, as described in the fourth sentence of Rule 28.2.1, have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualifications or recusal.

| **Plaintiffs-Appellees:** | M.D. by next friend Sarah R. Stukenberg |
| | D.I. by next friend Nancy G. Pofahl |
| | Z.H. by next friend Carla B. Morrison |
| | S.A. by next friend Javier E. Solis |
| | A.M. by next friend Jennifer Talley |
| | J.S. by next friend Anna J. Ricker |
| | K.E. by next friend John W. Cliff, Jr. |
| | M.R. by next friend Bobbie M. Young |
| | J.R. by next friend Bobbie M. Young |
| | H.V. by next friend Anna J. Ricker |
| | P.O. by next friend Anna J. Ricker |
| | L.H. by next friend Estela C. Vasquez |
| | C.H. by next friend Estela C. Vasquez |
| | S.R. by next friend Bobbie M. Young |
| | S.S. by next friend Estela C. Vasquez |
| | A.R. by next friend Tom McKenzie, individually and on behalf of all others similarly situated |

**Appellate and Trial Counsel:**

R. Paul Yetter
Christian J. Ward
Dori Goldman
Karla Maradiaga
YETTER COLEMAN LLP
811 Main Street, Suite 4100
Houston, Texas 77002
Telephone: (713) 632-8000

Barry F. McNeil
HAYNES AND BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone: (214) 651-5000

Samantha Bartosz
Stephen Dixon
Joshua Rosenthal
Elizabeth Pitman
Ira Lustbader
CHILDREN'S RIGHTS

88 Pine Street
New York, New York 10005
Telephone: (212) 683-2210

Michael Kenneth Bartosz
Rachel Brodin Nili
CHILDREN'S RIGHTS
330 Seventh Avenue, Floor 4
New York, New York 10001
Telephone: (212) 683-2210

Marcia Robinson Lowry
David Baloche
Laura Welikson
A BETTER CHILDHOOD, INC.
355 Lexington Avenue, Floor 16
New York, New York 10017
Telephone: (646) 795-4456

Richard Behrens
SHEARMAN & STERLING LLP
2601 Olive Street, Floor 17
Dallas, Texas 75201
Telephone: (214) 271-5812

**Defendants-Appellants:**      Greg Abbott, in his official capacity as Governor of the State of Texas

Stephanie Muth, in her official capacity as Commissioner of the Department of Family and Protective Services of the State of Texas

Cecile Erwin Young in her official capacity as Executive Commissioner of the Health and Human Services Commission of the State of Texas

**Appellate and Trial Counsel:**      Allyson N. Ho
Bradley G. Hubbard

John Stewart Adams
Stephen J. Hammer
Savannah C. Silver
Jason Muehlhoff
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas 75201
Telephone: (214) 698-3100

Prerak Shah
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, Texas 77002
Telephone: (346) 718-6600

Ken Paxton
Attorney General of Texas
Brent Webster
First Assistant Attorney General
Aaron Nielson
James Lloyd
Lanora Pettit
Kimberly Gdula
Karl E. Neudorfer
Clayton R. Watkins
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548, Capitol Station
Austin, Texas 78711
Telephone: (512) 463-2120

**Amici Curiae:**                     Foster Care Advocacy Center
National Disability Rights Network
Texas State Employees Union

**Appellate Counsel:**         Tara Grigg Green
State Bar No. 24094690
tara@fcactexas.org
FOSTER CARE ADVOCACY CENTER
2429 Bissonnet St. #767
Houston, Texas 77005

Telephone: (713) 814-3930
Facsimile: (713) 528-0888

/s/ *Tara Grigg Green*
TARA GRIGG GREEN

*Counsel for Amici Curiae*

# RULE 29(A)(4)(E) STATEMENT

Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), amici curiae certify that (A) no party's counsel authored this brief in whole or part; (B) no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and (C) no person, other than amici curiae, its members, or its counsel, contributed money that was intended to fund preparing or submitting the brief.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS .......................................................i

RULE 29(a)(4)(E) STATEMENT.........................................................................vi

TABLE OF CONTENTS ......................................................................................vii

INDEX OF AUTHORITIES ............................................................................ viii

INTEREST OF AMICUS CURIAE.....................................................................ix

INTRODUCTION AND SUMMARY OF THE ARGUMENT ............................1

ARGUMENT ........................................................................................................2

    I.    APPROPRIATE OVERSIGHT OF HCS PLACEMENTS IS
        VITAL TO THE LONG-TERM SAFETY AND STABILITY OF
        PMC CHILDREN WITH DISABILITIES ...................................................2

        A.    Children with Disabilities are Disproportionately Harmed by
            Insufficient Investigations....................................................................2

        B.    DFPS Routinely Argues in State Court that HCS Homes are too
            Dangerous for Foster Youth due to Inadequate Oversight .................7

        C.    There are Benefits for Children with Disabilities of Living in
            Safe and Appropriate HCS Homes ......................................................7

    II.    REASSIGNMENT OF JUDGE JACK WOULD BE
         UNNECESSARILY HARMFUL....................................................................9

CONCLUSION ...................................................................................................11

CERTIFICATE OF COMPLIANCE ..................................................................12

CERTIFICATE OF SERVICE............................................................................12

# INDEX OF AUTHORITIES

**Statutes**                                                        **Page**

TEX. ADMIN. CODE § 263.101                                              3

TEX. ADMIN. CODE § 263.4(a)                                            3

TEX. FAM. CODE § 263.601                                              3

**Other Authorities**

DFPS Statewide Intake Policies and Procedures Handbook §6100 (March 2024)...4

# INTEREST OF AMICUS CURIAE[1]

With leave of the Court,[2] this brief is filed on behalf of Foster Care Advocacy Center, the National Disability Rights Network, and the Texas State Employees Union in support of Plaintiffs' request for rehearing *en banc*. Based on their areas of advocacy and policy work, amici present a unique and helpful perspective to the Court. For more particular information about these amici:

Foster Care Advocacy Center ("FCAC") is the only multidisciplinary nonprofit law office in Texas devoted to child welfare law. FCAC takes appointments from Harris County courts to represent children and parents in ongoing child welfare proceedings. FCAC staff are considered experts in "complex" child welfare cases, such as cases involving child fatalities, parents or children with intellectual disabilities, parents or children with serious mental illness, medically fragile children, dual-status youth, youth aging out of care, or transgender youth. FCAC represents approximately 400 clients per year, and a significant number of these are children in the Permanent Managing Care of the Department of Family and Protective Services.

---

[1] No party's counsel authored this brief in whole or in part, and no party or party's counsel made a monetary contribution to fund the preparation or submission of this brief. No person or entity other than amici curiae or their counsel made a monetary contribution to the preparation or submission of this brief.

[2] Amici are contemporaneously submitting a motion for leave to file this amicus brief.

The National Disability Rights Network ("NDRN") is the non-profit membership organization for the federally mandated Protection and Advocacy ("P&A") and Client Assistance Program ("CAP") agencies for individuals with disabilities. The P&A and CAP agencies were established by the United States Congress to protect the rights of people with disabilities and their families through legal support, advocacy, referral, and education. There are P&As and CAPs in all 50 states, the District of Columbia, Puerto Rico, and the U.S. Territories (American Samoa, Guam, Northern Mariana Islands, and the US Virgin Islands), and there is a P&A and CAP affiliated with the Native American Consortium which includes the Hopi, Navajo and San Juan Southern Paiute Nations in the Four Corners region of the Southwest. Collectively, the P&A and CAP agencies are the largest provider of legally based advocacy services to people with disabilities in the United States.

Members of the Texas State Employees Union ("TSEU"), who work for the Department of Family and Protective Services, are responsible for protecting and preventing continuous abuse and harm of children that have come into the State's care. TSEU members are professionals dedicated to serving vulnerable Texans and are acutely aware of the need for reform within the agency and the foster care system.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Children with disabilities in the Permanent Managing Conservatorship ("PMC") of the Department of Family and Protective Services ("DFPS") deserve to be equally protected from abuse and neglect, the same as their non-disabled peers. Every child with a disability in a Home and Community-Based Services ("HCS") home[3] is at higher risk of emotional and physical harm than their non-disabled peers because Defendants continue to subject these children to different levels of placement oversight. The Provider Investigations ("PI") unit is tasked with ensuring children with disabilities in HCS homes are safe from abuse and neglect. They are failing at least 55% of the children they are entrusted with protecting. Op. 16. Every child failed by PI and left in harm's way is a child with a disability.

Children with disabilities are not just a "drop in the bucket" that should be discounted because PMC children without disabilities have a much lower risk of harm. Op. 17. These vulnerable youth deserve special consideration when determining whether Defendants substantially complied with Orders 3 and 10 because they are the children harmed the most. Children with disabilities are carrying the burden of Defendants' failures.

---

[3] Throughout this brief, HCS group homes and HCS host homes are collectively referred to as "HCS homes."

Despite Judge Jack's attempts to safeguard the wellbeing of both children in PMC and Defendants' employees, Defendants have demonstrated they are unwilling to make improvements on their own. Defendants call the district court's conduct an "insurmountable obstacle" without addressing the obstacles created by their own conduct. Defendants' recalcitrance is well-documented in tens of thousands of pages of records and testimony. For example, rather than complying with the remedial orders, over and over again, Defendants have changed how data is reported to manipulate statistics. It is *this* type of conduct that poses an "insurmountable obstacle" to the effective and efficient administration of justice. It is not the judge that needs to be changed but Defendants' own behavior.

For these reasons, we support Plaintiffs' request for rehearing *en banc,* believe the district court's contempt findings should be affirmed, and urge that Judge Jack remain on the case.

## ARGUMENT

## I. APPROPRIATE OVERSIGHT OF HCS PLACEMENTS IS VITAL TO THE LONG-TERM SAFETY AND STABILITY OF PMC CHILDREN WITH DISABILITIES

### A. Children with Disabilities are Disproportionately Harmed by Insufficient Investigations

The Home and Community-Based Services ("HCS") program is a Medicaid waiver program administered by the Texas Health and Human Services Commission ("HHSC"). The HCS program allows individuals with intellectual and

developmental disabilities ("IDD") to remain in the community with services and supports paid for by HHSC.[4] The program benefits are numerous and include the right to lifetime HCS housing.[5] HHSC licenses HCS homes and PI investigates abuse and neglect allegations concerning individuals living in those homes, including some foster children.

Due to the lack of foster homes for children with disabilities, PMC children with disabilities are disproportionately placed in HCS homes. DFPS places foster children with disabilities in both HCS host homes and group homes in one of two ways: 1) through a child-specific contract ("CSC"), wherein DFPS contracts with an HCS provider for placement of a specific child, and DFPS pays the HCS provider a certain daily rate for the placement; or 2) through enrollment in an HCS "slot," thereby switching the funding stream for the placement from DFPS to HHSC. Whether the child is enrolled in a slot or placed in an HCS home through a CSC, DFPS retains permanent managing conservatorship of a child placed in an HCS home until the child turns 18.[6]

---

[4] *See* TEX. ADMIN. CODE § 263.4(a) (program purpose and scope).
[5] Individuals who qualify for the HCS program can enroll in their "slot" in either a group or a host home. No separate determination of need or vulnerability influences whether an individual resides in one type of home or another. *See* TEX. ADMIN. CODE § 263.101 (program eligibility requirements); TEX. ADMIN. CODE § 263.101("[t]he setting is selected by the individual from among setting options").
[6] Unless otherwise provided for in TEX. FAM. CODE § 263.601.

When there is an allegation that a PMC child in an HCS home has been the victim of abuse or neglect while in care, determining investigative jurisdiction between HHSC and DFPS is based on a maze of conflicting and confusing policies. To make matters worse, the jurisdictional guidelines Defendants outline in their brief are different than those outlined in the DFPS Handbook.[7] Appellants' Brief p.10. At the point of intake, Defendants posit that they rely on a determination of whether a child is "eligible" for HCS to decide whether DFPS or HHSC should investigate the abuse and neglect allegation. Yet, determining whether a child is "eligible" for HCS services is a complex process involving multiple state agencies and can take months, if not years, to establish. There is simply no way that a DFPS Statewide Intake ("SI") worker can determine a child's HCS eligibility at the time of intake. If jurisdiction for investigations hinges on "eligibility" and there is no way for a SI worker to know a child's eligibility, every referral to investigation is a stab in the dark.

Defendants' arbitrary and contradictory criteria lead to inconsistent results. Their inability to adequately state reasonable criteria for investigative jurisdiction determinations makes it impossible to gauge their level of compliance with the

---

[7] "Child Protective Investigations investigates abuse and neglect allegations in settings that aren't licensed by HHSC—including Home and Community-Based Services host home settings if the alleged victim isn't eligible for services under the Home and Community-Based Services waiver program." Appellants' Brief p.10. This is different from the handbook that states HHSC Provider Investigations is responsible regardless of whether the child is receiving waiver services. *See* DFPS Statewide Intake Policies and Procedures Handbook §6100 (March 2024).

remedial orders because there is no way the data is accurate. The most logical reading of the policies governing investigative jurisdiction between HHSC and DFPS is that determinations are based on a complex matrix: whether the PMC child is placed in an HCS home through a CSC versus a slot *and* whether the child is placed in an HCS host home versus an HCS group home. This confusion can result in both agencies denying jurisdiction, leaving claims of abuse and neglect against especially vulnerable children uninvestigated altogether.

Defendants do not deny that HCS investigations are deficient, but instead argue that this inadequacy should be excused because DFPS investigations have improved for less vulnerable populations and investigations conducted by DFPS are in "substantial compliance." This position categorically disregards the rights of children with disabilities to be safe. Children with disabilities are, undoubtedly, the most defenseless children in PMC. They are uniquely vulnerable to abuse and exploitation, which is compounded by the fact that they often cannot tell anyone if they are being harmed.

However, when foster youth are able to tell their stories, they describe a common practice of profound emotional and physical abuse against PMC children with disabilities. Abuses that were allowed by PI to last for months, sometimes over a year, and often resulted in no remedial action to protect the victims. As one former foster youth testified, "When we could misbehave -- like if we even cried about

something or just like out of nowhere they would tell us when we misbehaved that we were there because our family didn't want us or that because we were bad kids and nobody wants bad kids, and to be appreciated that they even accept us." ROA.62964. This youth testified that in her HCS home, staff cursed at children and sometimes physically harmed them—one HCS staff member choked a young girl with a disability, and another broke the arm of a young boy with a disability. ROA.62964-62965. An HCS staff member also texted this teenage foster youth inappropriate things, and this harm was amplified by evoking memories of her traumatic history with her stepdad. When the foster youth reported the staff member, she was punished. ROA.62966. In another instance, a foster youth accused a staff member of raping her—a staff member who was convicted of raping his stepdaughter—but PI did not properly investigate, and that PMC child ended up in the emergency room with a broken jaw. ROA.62855.

Defendants do not seem to be concerned that they are leaving children with disabilities in dangerous situations, and certainly do not appear motivated to improve the safety and wellbeing of these children in the future. In the words of a former foster youth who experienced the harm caused by PI's failures, "Kids need to be heard, and things need to change for everyone. And we need a change, because everybody tells you, oh, CPS is going to take care of you, but just like they let me down, they let a bunch of kids down." ROA.63001.

## B. DFPS Routinely Argues in State Court that HCS Homes are too Dangerous for Foster Youth due to Inadequate Oversight

DFPS has determined that HCS placements are so unsafe due to the lack of HHSC oversight that they actively fight placing children into HCS homes (host homes and group homes alike) during state child welfare proceedings. DFPS has sent directives to regional offices that they oppose placing children in HCS homes because the lack of oversight by HHSC renders them less safe than traditional DFPS placements. Time and again, attorneys representing DFPS contest the placement of children into HCS homes because they are "dangerous." By decrying in individual cases that insufficient HHSC standards render HCS homes unsafe for foster children, DFPS has conceded that Defendants are not in substantial compliance with the remedial orders. Even DFPS agrees that there is as an unreasonable risk of harm for PMC children residing in HCS homes.

## C. There are Benefits for Children with Disabilities of Living in Safe and Appropriate HCS Homes

Children with disabilities in *safe* HCS placements can thrive and achieve a level of independence that they are unable to achieve in traditional foster placements. For children with intellectual disabilities who age out of foster care, HCS placements provide the opportunity for long-term stability and permanency. For youth with frequent placement moves, a particularly acute challenge for children with disabilities, an HCS home can provide long-term stability. This is largely because

HCS providers are specifically trained to work with individuals with disabilities, and traditional placements offered by DFPS are not. HCS homes are less likely to discharge children with challenging behaviors and are more reticent to involve law enforcement. The benefits to these children in school stability alone cannot be overstated.

Scores of children are placed in unnecessarily restrictive settings because DFPS does not have adequate homes for children with disabilities and opposes placement in HCS homes, citing concerns with HHSC oversight. Recently, DFPS has refused to consider placement of children in HCS homes even when the alternative is for a child to remain in a Child Without Placement ("CWOP") hotel. Defendants' failure to address the HCS oversight concerns has resulted in children with disabilities experiencing heightened placement instability and unnecessarily restrictive placements. DFPS has not replaced HCS homes with foster homes that meet these children's needs. Without access to safe and appropriate HCS homes, children with disabilities in PMC find themselves in hotels and shelters.

Timely and accurate investigations of abuse and neglect allegations for *all* children in PMC would allow children with disabilities to enjoy the same levels of safety and wellbeing as their non-disabled peers. Not only will this reduce the unnecessary risk of harm for children with disabilities already placed in HCS homes, but it will also open up the opportunity for other PMC children with disabilities to

live in a community-based setting where they can thrive. Ensuring that children with disabilities have access to safe and appropriate HCS placements requires Defendants to acknowledge that children with disabilities are a particularly vulnerable population and to commit to substantial compliance for these children.

## II. REASSIGNMENT OF JUDGE JACK WOULD BE UNNECESSARILY HARMFUL

Defendants highlight their progress, but progress was not achieved in a vacuum. Any progress is due in part to Judge Jack's diligence and persistence. Without a doubt, the Texas foster care system is better today than when the case began. Collective and universal progress can be made through improvements that account for all of the children in PMC care, including those with disabilities. Judge Jack has ensured that all children in PMC benefit equally by holding Defendants accountable for the changes required in the remedial orders.

Judge Jack's thorough and detailed contempt order demonstrates her understanding of the nuance and complexity of navigating the investigative boundaries between DFPS and HHSC. As discussed above, it is clear that Defendants themselves lack this same understanding. Many of Defendants' arguments opposing sanctions focus on the difficulty navigating the district court's orders. Defendants have been part of the proceedings since the case's inception and are intimately familiar with the injunctions, as demonstrated by their numerous

appeals. If it is too difficult for Defendants to navigate the remedial orders, how can a new judicial officer oversee them effectively?

Defendants complain about the district court's animus towards them. Yet Judge Jack has shown great empathy and concern for Defendants' employees. She continually advocates for improvement in working conditions for frontline staff. Judge Jack clearly holds Defendants' employees in high regard. In the contempt hearing, she said that "at some juncture we need to say on the record how grateful we are to the caseworkers and what they've done for these children." ROA.63027. She continued, "And we owe them a huge debt of gratitude. . .They work hard, they don't last long, and they do the best they can." ROA.63027. In the contempt order, she calls DFPS caseworkers the "unsung heroes of the foster care system." Contempt Order p.265. The order acknowledges that CWOP demands and improperly managed caseloads create an unacceptable atmosphere and work environment for staff. Contempt Order p.242. She acknowledges that working conditions are devastating to morale, making the care of children with complex needs even more difficult.

It is hard to reconcile this district court judge who exhibits obvious concern and high regard for the people working to help PMC children with Defendants' version of a district court judge so rife with bias that she can no longer effectively manage the case. The district court is concerned with the safety and wellbeing of the

frontline caseworkers and staff, not just the children in PMC. For an entire workforce teetering on the edge of collective burnout, it is imperative for their wellbeing and longevity that Judge Jack continue overseeing this case.

## CONCLUSION

For the foregoing reasons, this Court should grant the petition for rehearing *en banc,* affirm the district court's contempt findings, and deny reassignment of the case.

Dated: November 1, 2024

Respectfully submitted,

*/s/ Tara Grigg Green*
TARA GRIGG GREEN
State Bar No. 24094690
tara@fcactexas.org
FOSTER CARE ADVOCACY CENTER
2429 Bissonnet St., Ste. 767
Houston, Texas 77005
(713) 814-3930 (Phone)
(713) 528-0888 (Fax)

**COUNSEL FOR AMICI CURIAE**

## CERTIFICATE OF COMPLIANCE

I certify that:

1.    This brief complies with the type-volume of FED. R. APP. P. 32(a)(7)(B) and FED. R. APP. P. 29(a)(5), because it contains 2,282 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

2.    This brief complies with the typeface and type-style requirements of FED. R. APP. P. 32(a)(5) and (a)(6) because it was prepared in Microsoft Office Word software, in Times New Roman 14-point font in text, and Times New Roman 12-point font in footnotes as permitted by Fifth Circuit Rule 32.1.

*/s/ Tara Grigg Green*
TARA GRIGG GREEN

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of November, 2024, a true and correct copy of the foregoing document was filed electronically. Notice of this filing will be sent, by operation of the ECF system, to all counsel of record.

*/s/ Tara Grigg Green*
TARA GRIGG GREEN