No. 24-40248

# In the United States Court of Appeals for the Fifth Circuit

M. D., by next friend SARAH R. STUKENBERG; D. I., by next friend NANCY G. POFAHL;
Z. H., by next friend CARLA B. MORRISON; S. A., by next friend JAVIER SOLIS; A. M., by
next friend JENNIFER TALLEY; J. S., by next friend ANNA J. RICKER; K. E., as next
friend JOHN W. CLIFF, JR.; M. R., as next friend BOBBIE M. YOUNG; J. R., as next
friend BOBBIE M. YOUNG; H. V., by next friend ANNA J. RICKER; P. O., as next friend
ANNA J. RICKER; L. H., as next friend ESTELA C. VASQUEZ; C. H.; S. R., as next friend
BOBBIE M. YOUNG; S. S., as next friend ESTELA C. VASQUEZ; A. R., as next friend TOM
MCKENZIE, individually and on behalf of all others similarly situated,

*Plaintiffs – Appellees,*

v.

GREG ABBOTT, in his official capacity as GOVERNOR OF THE STATE OF TEXAS; CECILE
ERWIN YOUNG, in her official capacity as EXECUTIVE COMMISSIONER OF THE HEALTH AND
HUMAN SERVICES COMMISSION OF THE STATE OF TEXAS; STEPHANIE MUTH, in her official
capacity as COMMISSIONER OF TEXAS DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES,

*Defendants – Appellants.*

On Appeal from the U.S. District Court for the Southern District of Texas,
Corpus Christi Division, Case No. 2:11-cv-84

### APPELLANTS' RESPONSE TO PETITION FOR REHEARING EN BANC

Ken Paxton
*Attorney General of Texas*

Brent Webster
*First Assistant Attorney General*

Aaron Nielson
Lanora Pettit
Kimberly Gdula
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548, Capitol Station
Austin, Texas  78711
Telephone:  (512) 463-2120

Allyson N. Ho
*Counsel of Record*
Bradley G. Hubbard
Stephen J. Hammer
Savannah C. Silver
Jason Muehlhoff
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas  75201
Telephone:  (214) 698-3100

Prerak Shah
GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, Texas  77002
Telephone:  (346) 718-6600

COUNSEL FOR DEFENDANTS-APPELLANTS

## CERTIFICATE OF INTERESTED PERSONS

No. 24-40248,

*M. D., by next friend Sarah R. Stukenberg; D. I., by next friend Nancy G. Pofahl; Z. H., by next friend Carla B. Morrison; S. A., by next friend Javier Solis; A. M., by next friend Jennifer Talley; J. S., by next friend Anna J. Ricker; K. E., as next friend John W. Cliff, Jr.; M. R., as next friend Bobbie M. Young; J. R., as next friend Bobbie M. Young; H. V., by next friend Anna J. Ricker; P. O., as next friend Anna J. Ricker; L. H., as next friend Estela C. Vasquez; C. H.; S. R., as next friend Bobbie M. Young; S. S., as next friend Estela C. Vasquez; A. R., as next friend Tom McKenzie, individually and on behalf of all others similarly situated v. Greg Abbott, in his official capacity as Governor of the State of Texas; Cecile Erwin Young, in her official capacity as Executive Commissioner of the Health and Human Services Commission of the State of Texas; Stephanie Muth, in her official capacity as Commissioner of Texas Department of Family and Protective Services*

The undersigned counsel of record certify that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Defendants-Appellants | Counsel for Defendants-Appellants |
|---|---|
| **Greg Abbott** *in his official capacity as* Governor of the State of Texas<br><br>**Stephanie Muth** *in her official capacity as* Commissioner of the Department of Family and Protective Services of the State of Texas | Allyson N. Ho<br>Bradley G. Hubbard<br>John Stewart Adams<br>Stephen J. Hammer<br>Savannah C. Silver<br>Jason Muehlhoff<br>GIBSON, DUNN & CRUTCHER LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, Texas 75201<br>Telephone: (214) 698-3100 |

## CERTIFICATE OF INTERESTED PERSONS
(continued)

| Cecile Erwin Young<br>*in her official capacity as* Executive Commissioner of the Health and Human Services Commission of the State of Texas | Prerak Shah<br>GIBSON, DUNN & CRUTCHER LLP<br>811 Main Street, Suite 3000<br>Houston, Texas 77002<br>Telephone: (346) 718-6600<br><br>Ken Paxton<br>  *Attorney General of Texas*<br><br>Brent Webster<br>  *First Assistant Attorney General*<br><br>Aaron Nielson<br>James Lloyd<br>Lanora Pettit<br>Kimberly Gdula<br>Karl E. Neudorfer<br>Clayton R. Watkins<br>OFFICE OF THE ATTORNEY GENERAL<br>P.O. Box 12548, Capitol Station<br>Austin, Texas 78711<br>Telephone: (512) 463-2120 |
| **Plaintiffs-Appellees** | **Counsel for Plaintiffs-Appellees** |
| **M.D.** *by next of friend*<br>  Sarah R. Stukenberg<br><br>**D.I.** *by next of friend*<br>  Nancy G. Pofahl<br><br>**Z.H.** *by next of friend*<br>  Carla B. Morrison | R. Paul Yetter<br>Christian J. Ward<br>Dori Goldman<br>Karla Maradiaga<br>YETTER COLEMAN LLP<br>811 Main Street, Suite 4100<br>Houston, Texas 77002<br>Telephone: (713) 632-8000<br><br>Barry F. McNeil<br>HAYNES AND BOONE, LLP<br>2323 Victory Avenue, Suite 700 |

## CERTIFICATE OF INTERESTED PERSONS
### (continued)

| | |
|---|---|
| **S.A.** *by next of friend*<br>Javier E. Solis | Dallas, Texas  75219<br>Telephone:  (214) 651-5000 |
| **A.M.** *by next of friend*<br>Jennifer Talley | Samantha Bartosz<br>Stephen Dixon<br>Joshua Rosenthal |
| **J.S.** *by next of friend*<br>Anna J. Ricker | Elizabeth Pitman<br>Ira Lustbader<br>CHILDREN'S RIGHTS<br>88 Pine Street |
| **K.E.** *by next of friend*<br>John W. Cliff, Jr. | New York, New York  10005<br>Telephone:  (212) 683-2210 |
| **M.R.** *by next friend*<br>Bobbie M. Young | Michael Kenneth Bartosz<br>Rachel Brodin Nili<br>CHILDREN'S RIGHTS<br>330 Seventh Avenue, Floor 4 |
| **J.R.** *by next friend*<br>Bobbie M. Young | New York, New York  10001<br>Telephone:  (212) 683-2210 |
| **H.V.** *by next friend*<br>Anna J. Ricker | Marcia Robinson Lowry<br>David Baloche<br>Laura Welikson |
| **P.O.** *by next friend*<br>Anna J. Ricker | A BETTER CHILDHOOD, INC.<br>355 Lexington Avenue, Floor 16<br>New York, New York  10017<br>Telephone:  (646) 795-4456 |
| **L.H.** *by next friend*<br>Estela C. Vasquez | Richard Behrens<br>SHEARMAN & STERLING LLP<br>2601 Olive Street, Floor 17 |
| **C.H.** *by next friend*<br>Estela C. Vasquez | Dallas, Texas  75201<br>Telephone:  (214) 271-5812 |

**CERTIFICATE OF INTERESTED PERSONS**
(continued)

| | |
|---|---|
| **S.R.** *by next friend*<br>  Bobbie M. Young<br><br>**S.S.** *by next friend*<br>  Estela C. Vasquez<br><br>**A.R.** *by next friend*<br>  Tom McKenzie,<br>*individually and on behalf of*<br>*all others similarly situated* | |

Respectfully submitted,

 /s/ *Allyson N. Ho*
Allyson N. Ho

*Counsel of Record for*
*Defendants-Appellants*

# TABLE OF CONTENTS

Page

Certificate of Interested Persons ................................................................ i

Table of Authorities ................................................................................ vi

Introduction ............................................................................................ 1

Background .............................................................................................. 3

Argument ................................................................................................. 9

    I.    Rehearing en banc should be denied because the panel decision is correct, consistent with precedent, and rests on an unchallenged independent ground. .............................. 9

        A.    The panel correctly held that the contempt order violates state sovereign immunity—an independent basis for reversal plaintiffs don't challenge......................................................................... 9

        B.    Independently and alternatively, the panel correctly held that the contempt order violates due process. ....................................................................... 10

        C.    The panel decision is independently supported by its holding on substantial compliance—which is an absolute defense to civil contempt. .............................. 13

    II.    Rehearing en banc should be denied because the panel's holding on reassignment is correct, consistent with precedent, and supported by weighty federalism concerns. ................................................................................ 15

Conclusion............................................................................................. 21

Certificate of Service ............................................................................. 23

Certificate of Compliance ...................................................................... 23

## TABLE OF AUTHORITIES

<u>Page(s)</u>

### Cases

*In re DaimlerChrysler Corp.,*
294 F.3d 697 (5th Cir. 2002).........................................................17, 18

*Hicks ex rel. Feiock v. Feiock,*
485 U.S. 624 (1988)............................................................................10

*FTC v. Kuykendall,*
371 F.3d 745 (10th Cir. 2004)............................................................14

*Int'l Union, United Mine Workers of Am. v. Bagwell,*
512 U.S. 821 (1994).....................................................................10, 12

*Johnson v. Sawyer,*
120 F.3d 1307 (5th Cir. 1997)......................................................15, 18

*Miller v. Sam Hous. State Univ.,*
986 F.3d 880 (5th Cir. 2021)................................................15, 17, 18

*Offutt v. United States,*
348 U.S. 11 (1954).............................................................................18

*Penfield Company of California v. SEC,*
330 U.S. 585 (1947)....................................................................12, 13

*Pennhurst State Sch. & Hosp. v. Halderman,*
465 U.S. 89 (1984)...............................................................................9

*M.D. ex rel. Stukenberg v. Abbott,*
907 F.3d 237 (5th Cir. 2018).....................................................3, 4, 16

*M.D. ex rel. Stukenberg v. Abbott,*
929 F.3d 272 (5th Cir. 2019)..........................................................4, 16

*M.D. ex rel. Stukenberg v. Abbott,*
977 F.3d 479 (5th Cir. 2020)..........................................................4, 16

TABLE OF AUTHORITIES
(continued)

Page(s)

*United States v. Khan*,
   997 F.3d 242 (5th Cir. 2021)................................................................ 17

## Other Authorities

*DFPS*, Quarterly Report on Court Monitor Fees (Nov. 2024),
   bit.ly/3VEsNN8 ...................................................................................... 4

## Rules

Fed. R. App. P. 40(b)(2) ........................................................................ 9, 20

## INTRODUCTION

The state defendants are—and will always remain—committed to the welfare of the children in their care. In the half-decade since the district court entered a sweeping injunction superintending nearly every aspect of Texas's foster-care system, the State has worked tirelessly to comply with those demands and safeguard the children in its care. The State has spent at least $175 million in compliance costs (and paid court-appointed monitors an additional $67 million) and instituted countless reforms to improve its complex foster-care system and bring it into compliance with the district court's 60-plus remedial orders.

Despite these advances, the district court held the governor-appointed, senate-confirmed executive commissioner of one of the largest state agencies in America in contempt—and imposed an immediately accruing $100,000-per-day penalty—based on 38 investigations (out of thousands conducted annually), involving 13 children (out of approximately 7,400 children), that the court's monitors said didn't comply with two of the court's 60-plus remedial orders. The court even indicated a willingness to consider appointing a receiver over the State's foster-care system. And it did so notwithstanding the fact that the same

monitors found the state defendants compliant with 95 percent of the 954 investigations they reviewed for one of those two remedial orders, and 84 percent of the over 1,600 investigations they reviewed for the other.  Op. 17–18.

In a thorough, considered opinion, the unanimous panel painstakingly explained the multiple independent, alternative reasons why the contempt order cannot stand, and why the district court's "sustained pattern" of "disrespect for" and "highly antagonistic demeanor toward" the state defendants, its intent to retain and increase control over the State's foster-care system, and its disregard of this Court's mandates require reassignment.  Op. 21, 34.

Ultimately, the petition for rehearing en banc boils down to disagreement with the panel's application of settled law to the unique facts of this case.  Because the panel decision is correct, consistent with the precedent of this Court and the Supreme Court, creates no conflict with the decision of any other court, and is otherwise unworthy of further appellate review, rehearing en banc should be denied.

## BACKGROUND

Two Texas agencies—the Department of Family and Protective Services (DFPS) and the Health and Human Services Commission (HHSC)—play a crucial role in administering the State's foster-care system. Both DFPS and HHSC investigate reports that children in the State's care have been abused or neglected.

In 2011, plaintiffs—a class of children whose legal guardian is the State—sued the Governor and the heads of DFPS and HHSC, alleging that the State's administration of its foster-care system violated their substantive due process rights to be free from an unreasonable risk of harm. *M.D. ex rel. Stukenberg v. Abbott* ("*Stukenberg I*"), 907 F.3d 237, 246 (5th Cir. 2018).

The district court agreed and, in 2018, entered what this Court called a "sweeping" permanent injunction requiring the state defendants to take "dozens of specific remedial measures"—called the "remedial orders." *Id*. at 243, 247, 271; *see* ROA.22240, 24581–600. The court also appointed two monitors who, along with their three dozen staff members, track and provide detailed, semi-annual reports on the state defendants' compliance with the remedial orders. ROA.24596–98.

But as this Court has held no fewer than three times in seven years, the district court has routinely exceeded the scope of the relief it was constitutionally authorized to provide plaintiffs. The first time, this Court "invalidated or modified numerous aspects of the district court's remedy as not 'narrowly tailor[ed].'" Op. 2 (alteration in original) (quoting *Stukenberg I*, 907 F.3d at 272). The second time, this Court reversed in part because the district court "'reinserted' a provision similar to one rejected in *Stukenberg I*" and "added three other provisions that were overbroad or unjustified." *Id.* at 3 (quoting *M.D. ex rel. Stukenberg v. Abbott* ("*Stukenberg II*"), 929 F.3d 272, 277–78, 280–81 (5th Cir. 2019)). The third time, this Court reversed because the district court "'ignore[d]' the mandate of *Stukenberg II*" and "further changed the injunction." *Id.* (alteration in original) (quoting *M.D. ex rel. Stukenberg v. Abbott* ("*Stukenberg III*"), 977 F.3d 479, 483 (5th Cir. 2020)).

Over the next half-decade, the state defendants devoted significant efforts and resources—well over $250 million—to endeavoring in good faith to improve the foster-care system and comply with the district court's orders. Op. 15; *DFPS*, Quarterly Report on Court Monitor Fees (Nov. 2024), bit.ly/3VEsNN8. As a result of these extraordinary efforts,

4

the monitors' own reports show that by 2023, the state defendants' compliance with no fewer than a dozen remedial orders exceeded 90 percent. ROA.51453–77.

But starting in early 2023, the district court "urged and instigated" plaintiffs to seek sanctions. Op. 21. Plaintiffs eventually did so, citing alleged noncompliance (as relevant here) with Remedial Orders 3 and 10. ROA.46398, 46404–07.

Remedial Order 3 requires the state defendants to ensure that investigations into "reported allegations of child abuse and neglect" are (1) begun and completed "on time" and (2) "conducted taking into account at all times the child's safety needs." ROA.24582.

Remedial Order 10 requires the state defendants to "complete" certain types of investigations "within 30 days of intake," "unless an extension has been approved for good cause and documented in the investigative record." ROA.24583. Plaintiffs also asked the court to appoint a receiver over the foster-care system. ROA.47845.

The state defendants opposed plaintiffs' motion for a show-cause order, pointing out (among other things) that the monitors' reports conclusively establish substantial compliance—which is a complete

defense to civil contempt. Indeed, the monitors agreed with the disposition of over 90 percent of the investigations they reviewed. ROA.48221–29. To assess compliance with Remedial Order 3, the monitors reviewed 954 of the 2,000 investigations that were closed—and agreed with the disposition 95 percent of the time. ROA.45098–101. And they concluded that 84 percent of the over 1,600 investigations they reviewed that were opened between 2022 and 2023 complied with Remedial Order 10. ROA.50915–16.

After a 3-day bench trial, the district court issued a 427-page order holding HHSC's executive commissioner in contempt of Remedial Orders 3 and 10 based on 38 investigations involving 13 children conducted by HHSC's Provider Investigations ("PI") unit, formerly a part of DFPS. ROA.52996, 53127–29.

The order imposed an immediately effective, $100,0000 daily fine, which could be "suspended"—but not purged—only once "agency leadership" certified that all open investigations and all investigations closed after December 3, 2023 "are substantially compliant" with Remedial Orders 3 and 10. ROA.53127–29. The court explained that it would hold a "compliance hearing" several months later to review the

monitors' assessment of HHSC's substantial-compliance certifications—
and, "absent substantial compliance, any previously abated fines may be
reinstated." ROA.53129.

The court indicated that it was "carrying forward" five separate
contempt charges that had been fully litigated at the hearing—and were
the subject of some 250 pages of the court's 427-page order—along with
plaintiffs' request to appoint a receiver. ROA.53129, 52732–984.

After the district court denied the state defendants' motion for a
stay pending appeal, they immediately sought and received a stay from
this Court. Dkt. 77-2 (Stay Order), 2024 WL 2309123. After briefing and
argument, the panel reversed the contempt order for three separate,
independent reasons.

*First*, the district court imposed criminal contempt without
providing the constitutionally required procedural protections. Op. 5–10.
The panel addressed—and rejected—plaintiffs' assertion that those
procedures weren't required because the contempt order was civil (not
criminal). *Id.* at 10–12. The panel also rejected plaintiffs' request for
partial affirmance and remand for a civil-contempt remedy, because

there was no valid "quasi-civil" contempt that was "amenable to remand." *Id.* at 2.

*Second*, because the daily fines punished the state defendants for past conduct—i.e., investigations closed in the four months preceding the contempt order and those open on that date, regardless of when they were opened—they violated state sovereign immunity as well as due process. *Id.* at 13–14.

*Third*, even if the contempt were civil, rather than criminal, the state defendants met their burden to demonstrate substantial compliance—an absolute defense to civil contempt (*id.* at 12)—based on their good-faith efforts to comply with the district court's orders. *Id.* at 15–18.

Next, after conducting a "comprehensive review" of the district court's on-the-record statements, demeanor, and conduct since the last appeal, the panel further concluded that reassignment is necessary to ensure justice and the appearance of impartiality, particularly given the serious federalism concerns implicated by this institutional-reform case. *Id.* at 18–36.

ARGUMENT

## I. Rehearing en banc should be denied because the panel decision is correct, consistent with precedent, and rests on an unchallenged independent ground.

As a threshold matter, the petition falters right out of the gate because it doesn't mention—much less challenge—an independent, alternative ground supporting the panel's reversal of the contempt order. That alone justifies the denial of rehearing en banc. But there's more. The panel decision is correct, creates no conflict, and otherwise presents no reason—much less a sufficiently compelling one—for en banc review.

### A. The panel correctly held that the contempt order violates state sovereign immunity—an independent basis for reversal plaintiffs don't challenge.

It's black-letter law that state sovereign immunity blocks federal courts from ordering retroactive monetary relief based on state officials' alleged violations of federal law.  Op. 13–14 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102–03 (1984)).  Plaintiffs don't even mention the phrase "sovereign immunity" in their petition—much less explain how the panel's sovereign-immunity holding is incorrect or in conflict with any decision of this Court, its sister circuits, or the Supreme Court.  *See* Fed. R. App. P. 40(b)(2).

9

Plaintiffs offer no reason—because there is none—for rehearing en banc where, as here, the panel decision can be supported by an independent ground plaintiffs don't challenge.

### B. Independently and alternatively, the panel correctly held that the contempt order violates due process.

Everyone—the state defendants, plaintiffs, and the panel—agrees that if the fine imposed by the contempt order is retrospective, then it's criminal and violates due process. *See Hicks ex rel. Feiock v. Feiock*, 485 U.S. 624, 631 (1988). It is, so it does.

A fine is criminal—and requires additional protections to be imposed consistent with due process—if it's (1) non-compensatory, (2) retrospective, and (3) non-purgeable. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829, 834, 836–38 (1994); Op. 5–10. All agree that the fines here are non-compensatory. Plaintiffs no longer contend that they're purgeable, either—for good reason. They're not. As the panel correctly concluded, "'suspension' of fines is not the same as 'erasure' or 'removal' or 'cancellation.'" Op. 11.

The panel also correctly held (at 8–10) that the order is criminal because it punishes out-of-court conduct that allegedly failed to comply with a complex injunction—two conclusions with which plaintiffs no

longer take issue. Even if mere error correction were a sufficient basis for rehearing en banc (it isn't), rehearing would still be unwarranted for that reason, too.

That leaves retrospectivity. And the contempt order leaves no doubt that it's retrospective. It orders the state defendants to pay $100,000 per day until they certify that the timing with which they *had conducted* investigations now closed (as to Remedial Order 3) or *had initiated* investigations already opened (as to Remedial Order 10) substantially complied with the remedial orders. *See* ROA.53127–28. As the panel correctly observed, the state defendants "can do nothing to render any already-untimely investigations timely." Op. 7.

Plaintiffs take issue with that conclusion, arguing (at 22) that the state defendants could "reopen[] defective investigations and expedit[e] already-untimely ones." Neither of those things, however, could be done "overnight, but that is exactly what the court's order requires by imposing per diem fines that begin immediately." Op. 7.

Plaintiffs don't meaningfully argue otherwise. Instead, they argue (at 20–22) that "the district court clearly *intended* a civil contempt order." But as they concede (at 21), the "judge's characterization is not

conclusive," and as *Bagwell* makes clear, "the label affixed to a contempt ultimately will not be allowed to defeat the applicable protections of federal constitutional law," 512 U.S. at 838 (quotations omitted).

Insisting that, at least going forward, the contempt order is civil, plaintiffs disagree (at 23–26) with the panel's decision to reverse the order in full rather than scavenging through the text to find an acceptable civil alternative. But as the panel explained, reversal was required both because "this court's practice has been to reverse invalid contempt orders," and because there's no way to "treat this criminal contempt order and sanctions as quasi-civil and amenable to remand." Op. 12.

Tellingly, plaintiffs' lead case in support of their partial-affirmance argument (at 8, 21–24) is one that hasn't been cited in this case before by anyone—*Penfield Company of California v. SEC*, 330 U.S. 585 (1947). Not surprisingly, it doesn't support rehearing en banc. There, the SEC sought coercive relief to force a company executive to produce certain books and records. *Id.* at 587–88. The trial court "instead imposed on him a flat, unconditional fine," but without providing any of the due process protections required. *Id.* at 588.

The SEC appealed, arguing that it sought remedial relief rather than a retrospective penalty for not disclosing the documents. *Id.* at 589. The Ninth Circuit reversed the fine and instead ordered the executive imprisoned until he produced the documents—a quintessential coercive, civil contempt. *Id.* at 589, 592. The Supreme Court affirmed the civil contempt and reversal of the fine, which was meant to punish past defiance of the court's order and was therefore criminal, but impermissibly "imposed in a civil contempt proceeding." *Id.* at 593, 595.

Nothing in *Penfield* casts any doubt on the panel decision's reversal of the contempt order here in its entirety. If anything, *Penfield* confirms that criminal contempt imposed without the requisite due process protections cannot stand. It certainly didn't require the panel to rewrite the contempt order instead of reversing and remanding. So there's no conflict to resolve, much less any error to correct.

## C. The panel decision is independently supported by its holding on substantial compliance—which is an absolute defense to civil contempt.

Rehearing en banc is further unwarranted because, as the panel correctly held, the record (made by the court's own monitors) conclusively establishes that the state defendants substantially complied with the

remedial orders.   Op. 15–18.   And "[s]ubstantial compliance is an absolute defense to civil contempt."  *Id.* at 15.

As the panel correctly explained (at 17), the district court's decision to view HHSC's compliance separately from DFPS's compliance was wrong.  Plaintiffs invoke (at 27) an out-of-circuit case, *FTC v. Kuykendall*, 371 F.3d 745 (10th Cir. 2004) (en banc), but there's no conflict or inconsistency with that case.   In *Kuykendall*, each defendant executed the permanent injunction and agreed to its terms.  *Id.* at 750.  All the remedial orders in this case relating to abuse-and-neglect investigations are directed at DFPS or the State, not HHSC.  ROA.24582–99; Op. 17. HHSC is obligated to comply with the injunction precisely because it is *not* treated as a separate entity under the injunction.  Op. 17.

While plaintiffs insist (at 18, 28) that HHSC uses different "parameters" than DFPS, they offer no reason that difference matters when assessing the number of investigations that have complied with the court's orders.  Again, plaintiffs have identified no conflict with the panel decision, much less one worthy of en banc review.

**II.  Rehearing en banc should be denied because the panel's holding on reassignment is correct, consistent with precedent, and supported by weighty federalism concerns.**

Rehearing en banc is unwarranted, too, as to the panel's carefully considered and extensively explained decision to order that this case be reassigned to a different district judge on remand.  That decision is entirely consistent with precedent and correct.  If ever there were a case where reassignment was needed and amply justified, it's this one.

Under this Court's precedents, reassignment turns on "(1) 'whether the original judge would reasonably be expected upon remand to have substantial difficulty' in putting aside her previously expressed but inappropriate views, (2) 'whether reassignment is advisable to preserve the appearance of justice,'" or "the judge's role might reasonably cause an objective observer to question [the judge's] impartiality," and "(3) 'whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness.'"  Op. 19 (alteration in original) (quoting *Miller v. Sam Hous. State Univ.*, 986 F.3d 880, 893 (5th Cir. 2021), and *Johnson v. Sawyer*, 120 F.3d 1307, 1333 (5th Cir. 1997)).

15

Tellingly, the petition (at 29–30) takes issue only with the panel's application of the third factor—arguing that reassignment would cause delay, which would in turn endanger children in the foster-care system. But reassignment won't slow one iota the State's continuing efforts to comply with the remedial orders and protect the children in its care. If anything, it's the district court's repeated refusals to comply with this Court's mandates—leading to multiple appeals—that has delayed and disrupted progress in this case. *See*, *e.g.*, *Stukenberg I*, 907 F.3d at 272 (reversing for not narrowly tailoring its orders); *Stukenberg II*, 929 F.3d at 276 (reversing for "disregard[ing] the explicit directives of that court"); *Stukenberg III*, 977 F.3d at 483 (reversing for refusing to implement the panel's instructions, "replac[ing] judicial hierarchy with judicial anarchy").

That's one reason plaintiffs' floodgates concerns (at 31) are misplaced. Another is that the facts of this case—such as the multiple appeals to this Court spanning years and years, each time resulting in at least partial reversal for the district court's same fundamental failure to stay within the proper bounds of its authority—are highly (and thankfully) unusual. *See supra* 4; Op. 20 (recounting the district judge's

16

request that the state defendants find a way to fund a "unified computer system" *after* this Court invalidated that requirement as overbroad).

Under this Court's precedents, such persistent defiance outweighs any concerns about "delay" and warrants reassignment. *See In re DaimlerChrysler Corp.*, 294 F.3d 697, 701 (5th Cir. 2002); Op. 19 (citing *United States v. Khan*, 997 F.3d 242, 249 (5th Cir. 2021) (reassigning when district court "seemed determined . . . to once again impose the same" ruling after reversal)). Plaintiffs make no argument that the panel decision conflicts in any way with those precedents.

In addition to the district court's persistent defiance of this Court's mandates, the panel opinion also highlights the need for reassignment to "avoid[] . . . the appearance of partiality." *Miller*, 986 F.3d at 883.

The panel opinion exhaustively catalogs repeated instances of what plaintiffs euphemistically refer to (at 31) as the district judge's "negative instances" toward the state defendants, from referring to the plaintiff class as "*my* class of children," to "order[ing] the HHSC commissioner to appear for a hearing two days after emergency surgery," to interrupting another witness's testimony to state "I don't know how the State sleeps at night with this," to making a "crude jest" at the expense of the state

defendants that the court would sentence the DFPS and HHSC commissioners to "maybe one of the cheap motels, where they can live off of McDonald's," or be "subject to the tasering or the handcuffs." Op. 24–25, 27, 30–32 (emphasis added).

These are only a handful of the troubling instances discussed by the panel opinion. *See id.* at 21–36. Such conduct is more than enough to merit reassignment. *See id.* at 30–31 (quoting *Johnson*, 120 F.3d at 1335 (reassignment when judge stated that witnesses were "lying through their teeth")); *id.* at 33 (quoting *DaimlerChrysler Corp.*, 294 F.3d at 701 & n.1 (reassigning because of a judge's demonstrated "hostility," including a sarcastic attack on the defendants)).

Try as they might (at 29–31), plaintiffs cannot diminish the corrosive effect of all these "negative instances" on the appearance of impartiality—because "justice must satisfy the appearance of justice," or we "suffer the loss of public confidence in our judicial system." *Miller*, 986 F.3d at 883 (quoting *Offutt v. United States*, 348 U.S. 11, 14 (1954)). To be sure, as plaintiffs note (at 31), "reassignment 'turns on more than intemperate remarks,'" but there's much more than that here, as the panel painstakingly catalogued. *See* Op. 21–36.

18

What's more, the petition ignores the weighty issues of federalism that the panel appropriately factored into its reassignment analysis. As a panel-stage *amicus* brief filed on behalf of the other states in this Circuit attests, federal courts must tread carefully with institutional-reform injunctions, in particular, as they "hand over the sovereign keys of State institutions to the federal judiciary, which may then dictate day-to-day operations on pain of (as this case demonstrates) millions of dollars in monitor fees and contempt costs." States' *Amici* Br. 2.

But the district judge here did the opposite—not only attempting to bully the State through micromanagement on pain of contempt and fines, but also creating a "'fund,' based on plaintiffs' attorneys' foregoing their court-approved fees, that the court may evidently disburse at its discretion." Op. 36. As the panel recognized, "[f]ederal judges should not be personally allocating resources from the state's taxpayers for purposes not directly tied to and controlled by the state itself in order to abide by a court decree." *Id.*

Predictably, the district judge has shown no intent to "restore sovereign prerogatives to the States." States' *Amici* Br. 6. To the contrary, despite the significant overall progress even the court's own

monitors documented, the contempt order reserved for further consideration plaintiffs' request for a receivership. ROA.53129. As the panel observed, "not only has the district court clearly indicated an intent to continue oversight well into the future, but . . . this contempt order seems a harbinger of even more drastic district court micromanagement." Op. 18.

Enough is enough. "[A]s a general rule of law federal judges are not allowed to become permanent de facto superintendents of major state agencies," nor "is it appropriate for federal court intervention to thwart the state's self-management, where the state is taking strides to eliminate the abuses that led to the original decree." *Id.* at 35–36. If anything, the panel's carefully considered decision to reassign this case on remand is all but compelled by the need to restore the appearance of justice to these proceedings and to respect the significant federalism interests they implicate.

No doubt plaintiffs strongly disagree with the result reached by the panel—but even if error correction were a basis for rehearing en banc (and it isn't, Fed. R. App. P. 40(b)(2)), there's no error to correct. The

panel decision is consistent with precedent, creates no conflict with any other court, and is otherwise entirely unworthy of rehearing en banc.

## CONCLUSION

This Court should deny plaintiffs' petition for rehearing en banc.

Date:  December 16, 2024

Ken Paxton
*Attorney General*

Brent Webster
*First Assistant Attorney General*

Aaron Nielson
*Solicitor General*

James Lloyd
*Deputy Attorney General for*
*Civil Litigation*

 /s/ *Lanora Pettit*
Lanora Pettit
*Principal Deputy Solicitor General*

Kimberly Gdula
*Chief*
*General Litigation Division*

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548, Capitol Station
Austin, Texas  78711
Telephone:  (512) 463-2120
Facsimile:  (512) 370-0667

Respectfully submitted,

 /s/ *Allyson N. Ho*
Allyson N. Ho
Bradley G. Hubbard
Stephen J. Hammer
Savannah C. Silver
Jason Muehlhoff

GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, Texas  75201
Telephone:  (214) 698-3100
Facsimile:  (214) 571-2900

Prerak Shah

GIBSON, DUNN & CRUTCHER LLP
811 Main Street, Suite 3000
Houston, Texas  77002
Telephone:  (346) 718-6600
Facsimile:  (346) 718-6620

COUNSEL FOR DEFENDANTS-APPELLANTS

22

## CERTIFICATE OF SERVICE

I certify that, on December 16, 2024, a true and correct copy of the foregoing brief was served via CM/ECF on all counsel of record.

/s/ *Allyson N. Ho*
Allyson N. Ho

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the typeface requirements of Rule 32(a)(5) and the typestyle requirements of Rule 32(a)(6) because it was prepared in 14-point New Century Schoolbook, a proportionally spaced typeface, using Microsoft Word for Microsoft 365. This brief complies with the type-volume limitation of Rule 40(d)(3) because it contains 3,822 words, excluding the parts exempted by Rule 32(f).

I certify that: (1) any required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission of this document is an exact copy of any corresponding paper document, 5th Cir. R. 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus-scanning program and is free of viruses.

/s/ *Allyson N. Ho*
Allyson N. Ho