# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
February 11, 2025
Lyle W. Cayce
Clerk

No. 24-40248

M. D., by next friend Sarah R. Stukenberg; D. I., by next friend Nancy G. Pofahl; Z. H., by next friend Carla B. Morrison; S. A., by next friend Javier Solis; A. M., by next friend Jennifer Talley; J. S., by next friend Anna J. Ricker; K. E., *as next friend* John W. Cliff, Jr.; M. R., *as next friend* Bobbie M. Young; J. R., *as next friend* Bobbie M. Young; H. V., by next friend Anna J. Ricker; P. O., *as next friend* Anna J. Ricker; L. H., *as next friend* Estela C. Vasquez; C. H., by next friend Estela C. Vasquez; S. R., *as next friend* Bobbie M. Young; S. S., *as next friend* Estela C. Vasquez; A. R., *as next friend* Tom McKenzie, *individually and on behalf of all others similarly situated*,

*Plaintiffs—Appellees*,

versus

Greg Abbott, *in his official capacity as Governor of the State of Texas*; Cecile Erwin Young, *in her official capacity as Executive Commissioner of the Health and Human Services Commission of the State of Texas*; Stephanie Muth, *in her official capacity as Commissioner of Texas Department of Family and Protective Services*,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:11-CV-84

## ON PETITION FOR REHEARING EN BANC

Before Jones, Clement, and Wilson, *Circuit Judges*.

Per Curiam:[*]

The petition for rehearing en banc is DENIED. At the request of one of its members, the court was polled, and a majority did not vote in favor of rehearing (Fed. R. App. P. 40 and 5th Cir. R. 40).

In the en banc poll, five judges voted in favor of rehearing (Judges Stewart, Graves, Higginson, Douglas, and Ramirez), and nine judges voted against rehearing (Judges Jones, Smith, Richman, Southwick, Haynes, Willett, Duncan, Engelhardt, and Wilson).

---

[*] Chief Judge Elrod, and Judges Ho and Oldham did not participate in the consideration of the rehearing en banc.

STEPHEN A. HIGGINSON, *Circuit Judge*, joined by STEWART, GRAVES, and DOUGLAS, *Circuit Judges*, dissenting from denial of rehearing en banc:

I would grant the petition for rehearing. The panel opinion conflicts with prior decisions from the Supreme Court and this court, and the questions raised are of substantial public importance. This case warrants a second look.

The case concerns the Texas foster care system. The district court found, and this court agreed, that deficiencies in that system violated Texas's constitutional obligations to children in its care. *M.D. ex rel. Stukenberg v. Abbott*, 907 F.3d 237, 264–68 (5th Cir. 2018). To remedy those violations, the district court ordered Texas's Department of Family and Protective Services (DFPS), formerly under the state's Health and Human Services Commission (HHSC), to timely and adequately investigate certain allegations of child abuse and neglect. *See M.D. ex rel. Stukenberg v. Abbott*, 730 F. Supp. 3d 354, 363 (S.D. Tex. 2024). DFPS is now a standalone agency, but HHSC retains the responsibility to investigate allegations of abuse and neglect of children supported by certain programs for individuals with intellectual and developmental disabilities. The state failed to be transparent with the district court about shortcomings in those investigations. *Id.* at 512. On April 15, 2024, the court imposed a daily fine until HHSC certified that it was substantially complying with the court's decree in investigations closed after December 4, 2023, as well as in investigations that remained open. *Id.* at 626–27. The panel opinion, *M.D. ex rel. Stukenberg v. Abbott*, 119 F.4th 373 (5th Cir. 2024), concluded that these sanctions were barred by sovereign immunity, amounted to criminal contempt without due process, and assessed compliance with the decree too stringently. The case was reassigned.

I respectfully disagree with the panel opinion's analysis, starting with the question of sovereign immunity. The panel opinion concluded that the

district court's fines "punish[ed]" HHSC's "past malfeasance in violation of the Eleventh Amendment." *Id.* at 383. The opinion relied on the distinction between "an injunction that governs the official's future conduct" and an award of "retroactive monetary relief," putting the district court's order in the second category. *Id.* at 382 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 103 (1984)).

Were we to grant rehearing, I do not think that reasoning would withstand scrutiny. It cannot be deduced that relief is "retroactive" merely because it is predicated on events in the past. The district court attempted to coerce *future* compliance by imposing sanctions informed by HHSC's *ongoing* contempt for its decree. The reasoning for the court's decision should not be conflated with the effect of its judgment. A contempt sanction is not retrospective in effect simply because the court considers—as it must any time contempt is in issue—a party's past failures to comply with the decree.

Neither can it be maintained that the district court ordered "retroactive monetary relief" solely because fines are monetary. That would be incorrect as a matter of first principles, and it is directly contradicted by Supreme Court precedent. Even when monetary exactions in aid of an injunction are "'compensatory' in nature," that "does not change the fact that" the underlying relief "operates prospectively" as permitted by the Eleventh Amendment. *Milliken v. Bradley*, 433 U.S. 267, 290 (1977).

Accordingly, it is completely consistent with the Eleventh Amendment for federal courts to assess fines against state officials in civil or even criminal contempt proceedings, as was explained in *Hutto v. Finney*, 437 U.S. 678, 690–91 (1978). "The principles of federalism that inform Eleventh Amendment doctrine surely do not require federal courts to enforce their decrees only by sending high state officials to jail." *Id.* at 691. "If a state

agency refuses to adhere to a court order, a financial penalty may be the most effective means of insuring compliance." *Id.* That is just what happened here. HHSC refused to adhere to the district court's order, so the district court imposed a financial penalty as a means of ensuring compliance with that order in the future. That was not retroactive relief, and it was not barred by the Eleventh Amendment.

One explanation for these missteps is that the panel opinion thought it was proper to treat the contempt sanctions at issue as a unified punitive and thus retrospective whole. From this, the opinion concluded not only that the sanctions offended the Eleventh Amendment, but also that they lacked the process required in proceedings of a criminal nature. Even setting aside *Hutto*, however, there are substantial problems with that approach.

The first problem—a matter of interpretation, but given the public importance, one that warrants our consideration en banc—is that the sanctions do not appear to have been punitive at all. Had HHSC certified to the district court that investigations closed prior to the order were not in substantial compliance and could not be effectively reopened to remedy their defects, it is far from clear that the district court's order would have imposed fines upon HHSC in perpetuity for a failure of compliance that could never be cured. Rather, the point of the order was for HHSC to rectify its failures of transparency by certifying to the court that any deficiencies that could be remedied had been addressed. If it was felt that the district court's phrasing needed clarification, the order could have simply been modified for that purpose.

The second and more substantial problem is that, even if the sanctions were criminal as applied to past conduct, it takes an additional and unsteady step to infer that the sanctions were thereby also criminal as applied to HHSC's future compliance. Even assuming the district court intended to

punish HHSC for its past failures, other parts of the sanctions were clearly meant to coerce HHSC into conforming to the decree going forward. The panel opinion strained against precedent and logic, and perhaps even committed the sort of error of which it accused the district court, in concluding that the district court's attention to the past disqualified it from ensuring HHSC's compliance in the future.

The panel opinion relied on the rule that when a contempt sanction with both criminal and civil aspects is appealed before final judgment, "the criminal feature of the order . . . fixes its character for purposes of review" because "jurisdiction to review that part which was civil" accompanies interlocutory review of the criminal portion. *See Union Tool Co. v. Wilson*, 259 U.S. 107, 110–11 (1922). According substantive weight to this procedural detail, the panel opinion reasoned that any punishment for past noncompliance made the entire contempt order criminal in nature and thus rendered it void for lack of due process. 119 F.4th at 378–82.

In my view, that analysis was incorrect and so was the conclusion. "[I]t does not necessarily follow" from "the review of civil contempt orders which would otherwise not be final and appealable" that in a "'mixed relief' case, a Court must vacate and remand the whole proceeding for failure to comply with criminal procedure." *FDIC v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995). Instead, this court "need only vacate the criminal element of the order." *Id.* This has been apparent since *Union Tool*, which treated the reviewability rule as procedural, *see* 259 U.S. at 110–11, and on the merits sustained the "remedial, as distinguished from punitive" portion of the contempt sanction, going so far as to say that the district court abused its discretion in purging the defendant's contempt, *id.* at 114.

We addressed a situation like the one here in *Lamar Financial Corp. v. Adams*, 918 F.2d 564 (5th Cir. 1990). There, we were also reviewing a fine

which accrued daily for deficient compliance. *Id.* at 566. The fines were found to be punitive as assessed on failures of compliance preceding a hearing, since such failures could not be cured, but coercive as assessed on conduct following the hearing, since the contemnors had the option to cure the contempt. *Id.* We noted that the contempt order "contain[ed] both a punitive and a coercive dimension" so would be "characterized as a criminal contempt order" for "purposes of appellate review"—but rather than invalidating the whole sanction for lack of due process, we vacated only the punitive "portion of the sanction." *Id.* at 567.

I read the panel opinion primarily to say that we took a different approach in *Lamar* by treating the civil and criminal parts of the single sanction at issue as severable. *See* 119 F.4th at 382 n.1. I agree, and I think the same approach was required here. Trimming any reference to the past from the order could have been accomplished by taking out the days from December 4 to April 15. That would have settled any doubts on this score.

The issue of substantial compliance presents no less pressing concerns. Over 427 pages of analysis, the district court described how HHSC's procedures led to ineffective and delayed investigations that left children in harm's way, in contrast to the procedures implemented by DFPS under the court's orders. The district court focused on this noncompliance within HHSC in view of the agency's responsibility to protect disabled children from abuse and neglect, and determined that HHSC was out of compliance in a majority of this especially vulnerable subset of cases. The panel opinion rejected this analysis, stating that the district court should have instead compared noncompliance with the overall rate of compliance across the state. *Id.* at 384–85.

But the panel opinion did not remand for factfinding according to that standard. Instead, the panel presented a series of calculations and then

affirmatively concluded that the defendants, assessed together, were in substantial compliance. *Id.* at 385. No legal justification for that conclusion appears anywhere in the opinion. At no point is set forth any "judicially manageable standard," *cf. Vieth v. Jubelirer*, 541 U.S. 267, 291 (2004) (opinion of Scalia, J.), indicating that compliance, in whatever way measured, was *substantial*.

I doubt that relegating disabled children, who are most at risk of abuse and neglect in the foster system, to a separate and inferior system of investigations pencils out to substantial compliance under even the most austerely mathematical of standards. Were we to remand, the district court might well reason that HHSC's systematic failure to protect those most vulnerable to mistreatment was not consistent with substantial compliance. The district court might take the view that it is inappropriate to treat disabled children, simply because they are fewer in number than other children, as "just a drop in the bucket." *See* 119 F.4th at 385. Such a view would be in line with what we "expect[]" in "a civilized and decent society," and I see no reason to doubt that this is among those "vast majority of situations" in which consideration of the special needs of the most vulnerable among us "is not only legitimate but also desirable." *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 444 (1985).

This all brings us to the removal of Judge Jack from this case that she has been shepherding for over a decade. I question whether the foregoing errors may have helped to support the decision to reassign the case and would submit accordingly that this part of the panel's decision warrants our reconsideration as well.

As a court of review rather than first view, we should exercise the utmost restraint in removing district court judges from cases, especially based on sharp and sarcastic statements to counsel of a kind that we have

been known to deploy ourselves. The panel thought that Judge Jack was inappropriately "telegraph[ing]" her "leanings." 119 F.4th at 393. But district court judges, sitting alone in yearslong dialogue with counsel (unlike us), often have justifications and excuses for these kinds of statements.

We typically allow district court judges to make statements that reflect familiarity with the litigation. *See Liteky v. United States*, 510 U.S. 540, 551 (1994). "If the judge did not form judgments of the actors in those courthouse dramas called trials, he could never render decisions." *Id.* (quoting *In re J.P. Linahan, Inc.*, 138 F.2d 650, 654 (2d Cir. 1943) (Frank, J.)). And here, we are dealing with administration of managerial devices at the remedies stage, not prejudgment of a case that has just been filed on the docket. *See* Samuel L. Bray, *The System of Equitable Remedies*, 63 UCLA L. Rev. 530, 564–67 (2016). We should be cautious about generalizing indicia of partiality from our pretrial precedents to the setting where a veteran judge is steadily administering a remedy for a constitutional violation that has already been adjudged (and upheld on appeal).

I am particularly untroubled by Judge Jack's diligent attention to the interests of the children in the Texas foster care system. *See* 119 F.4th at 388, 389, 392, 393. Equity moderates the rigors of the law, and therefore demands appropriate consideration for those who are least able to mount a vigorous offense by legal right alone. To extend the chancellor's protection over those children who have too little else to shelter them from the perils of the world is not partiality but traditional equity practice. *See, e.g.*, *Clitherall v. Ogilvie*, 1 S.C. Eq. (1 Des. Eq.) 250, 261 (S.C. Ch. 1792).

I respect the panel's assessment of the considerable record compiled by Judge Jack during her decade-plus involvement with this crisis. But our decision today as a full court to leave things as they are strikes me as resting on miscalculations. I worry that we have concluded, from Judge Jack's

assiduous effort in the face of structural friction and intense factual complexity, from remarks based in at best a desire to expeditiously give effect to the Constitution and at worst human error of a nature with regard to which we have perhaps not always set the best example, that Judge Jack is not suited to preside over this case for precisely the reasons that she is suited to preside over this case. I fear that we have inadvertently decided that we cannot leave the case with a district court judge who is deeply familiar with the parties and their conduct and with the substantial public interests at stake. At the very least, I question whether we have met the exceedingly high threshold for removing an Article III colleague.

It is fundamental in our historic liberties that the state may not set aside due process of law in the care of its wards. But today, we turn away the children protected by those guarantees and shut the doors of this court. On the other side, with them, is Supreme Court precedent and our own case law and the familiarity built by a fellow inferior court judge over many long years. On the other side is abuse and neglect, put out of sight of the law once more. We should rehear this case. I respectfully dissent.